UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| A. CORNELL BLANKS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CA No. 4-10-cv-297-Y |
| | § | |
| UNITED AEROSPACE WORKERS | § | |
| LOCAL 848, JAMES RUSSELL STROWD, | § | |
| WENDELL HELMS, and ROMEO MUNOZ | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF RESPONSE TO
PLAINTIFF'S (MOTION FOR) SUMMARY JUDGMENT**

SANFORD R. DENISON
Texas Bar No.  05655560
Baab & Denison, LLP
Stemmons Place, Suite 1100
2777 N. Stemmons Freeway
Dallas, TX 75207
(214) 637-0750; (214) 637-0730 FAX
Email: denison@baabdenison.com

COUNSEL FOR UNITED AEROSPACE
WORKERS LOCAL 848 of the UAW, JAMES
RUSSELL STROWD, WENDELL HELMS, AND
ROMEO MUNOZ

Dated: June 21, 2011

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iv

INTRODUCTION ..................................................................................................... 1

ARGUMENT............................................................................................................. 1

I.      THE LEGAL DOCTRINE OF COLLATERAL ESTOPPEL PREVENTS BLANKS FROM
        ESTABLISHING A REQUIRED ELEMENT OF HIS ONLY REAL ALLEGED CLAIM IN
        THIS LAWSUIT AND DEFEATS HIS MOTION AS A MATTER OF LAW ........................ 2

II.     AS A MATTER OF LAW, BLANKS CANNOT OBTAIN SUMMARY JDUGMENT ON
        ANY OF HIS ALLEGED CLAIMS AND HIS MOTION MUST BE DENIED........................ 5

        A.      Blanks is unable to establish any undisputed material facts that would support his
                alleged claims.................................................................................................. 5

        B.      The "Facts" Blanks set forth in Section 5 of his Motion (doc. 69, PageID 1052-53)
                affirmatively precludes every alleged claims against every Defendant as identified by
                Blanks, except his alleged DFR claim against Defendant Local 848.............................. 7

        C.      Even assuming, *arguendo*, that each of Blanks' alleged claims, except his
                alleged DFR claims against Defendant Local 848, is not otherwise preempted
                or barred, blanks fails to conclusively prove each element of each claim and
                cannot demonstrate his entitlement to judgment as to any of these alleged
                claims................................................................................................................ 9

                (1)     "Breach of the Unions Fiducuary Duties" [sic] .................................. 9

                (2)     "Violation of the Collective Bargains Agreement Article V" [sic] .................... 9

                (3)     "Unfair Labor Practices Claim" ...................................................... 10

                (4)     "Discrimination" ......................................................................... 10

                (5)     "Contract Fraud" ........................................................................ 11

                (6)     "Contract Violation of the labor Code 305" [sic]............................... 11

                (7)     "Collective Bargaining Agreement (CBA), fiduciary duty"............................... 11

                (8)     "Malpractice" ............................................................................. 11

                (9)     "Breach of Contract" .................................................................. 12

                (10)    "Breach of Employment Contract" ................................................. 12

(11)   "Negligence" ............................................................................... 12

(12)   "Fraud" ........................................................................................ 12

(13)   "Damages" .................................................................................. 13

D.   Blanks is unable to conclusively prove each element of his alleged DFR claims against Defendant Local 848 and nor can he establish his entitlement to judgment as a matter of law as this alleged claim ............................................................... 13

(1)   No admissible summary judgment evidence supports Blanks' allegations that Local 848 had a discriminatory or hostile motive towards him while processing his grievance ..................................................................... 14

(2)   No admissible summary judgment evidence supports Blanks' allegations that Local 848's conduct in the processing of his grievance was negligent dishonest or perfunctory ..................................................................... 16

(3)   As a matter of fact and as a matter of law, Local 848 timely processed Blanks' grievance in complete conformance with the CBA ............................................ 18

(4)   As a matter of fact, Blanks' grievance was not meritorious and, even if it were, as a matter of law, Local 848 did not violate its DFR to Blanks by not submitting his grievance to arbitration ............................................................... 20

(5)   No summary judgment evidence supports Blanks' allegation that Helms and Strowd have a track record of not taking grievances to arbitration nor does Blanks present any legal authority that the union's arbitration track record entitles him to judgment as a matter of law ...................................... 22

III.   ALTERNATIVELY, DEFENDANTS' EVIDENCE CONCLUSIVELY ESTABLISHES MATERIAL FACTS THAT AFFIRMATIVELY DEFEAT BLANKS' ALLEGED CLAIM AND, THUS, HIS MOTION MUST BE DENIED ................................................... 23

A.   Undisputed material facts that affirmative and conclusively preclude summary judgment in favor of Blanks... ....................................................................... 24

B.   Blanks is unable to establish any undisputed material facts that would support his alleged claims ......................................................................................... 44

CONCLUSION ............................................................................................................... 49

## TABLE OF AUTHORITIES

A. Cornell Blanks v. Vought Aircraft Industries, Inc.,
2010 WL 4315530 (N.D. Tex) ........................................................................................... 4

A. Cornell Blanks v. Vought Aircraft Industries, Inc.,
2010 WL 4321580 (N.D. Tex) ........................................................................................... 4

ALPA v. O'Neil, 499 U.S. 65, 67 (1991) ........................................................ 13, 14, 21, 48, 49

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ................................................... 1

Anjelino v. New York Times Co., 200 F.3d 73, 95-96 (3d Cir. 1999) ................................. 10, 15

Barker v. Norman, 651 F.2d 1107, 1123 (5th Cir.1981) ................................................... 14, 15

Boeing v. Shipman, 411F.2d 365 (5th Cir.1969) (en banc) ................................................. 2, 49

Bowen v USPS, 459 U.S. 212, 213 (1983) ............................................................................ 13

Carter v. Chrysler Corp., 173 F.3d 693, 703-04 (8th Cir. 1999) ........................................... 15

Celotex v Catrett, 477 U.S. 317, 323 (1986) ......................................................................... 2

DelCostello v. IBT, 462 U.S. 151 (1983) ............................................................................. 3, 4

EEOC v. Agro Distribution, LLC, 555 F.3d 462, 469 (5th Cir. 2009) ...................................... 1

Ellis v. Principi, 246 F. App'x 867, 869 (5th Cir.2007) ......................................................... 2

Ford v. Huffman, 345 U.S. 330, 338 (1953) .......................................................... 13, 14, 21, 48

Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) .............................................................. 2

Goodman v. Lukens Steel Co., 482 U.S. 656, 667-69, 107 S.Ct. 2617, 2624-25,
96 L.Ed.2d 572 (1987) ..................................................................................................... 15

Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995) ............................................................... 2

Hines v. Anchor Motor Freight, Inc., 424 U.S. 564, 570-71 (1976) ......................................... 4

Landry v. The Cooper/T. Smith Stevedoring Co., 880 F.2d 846, 852 (5th Cir.1989) ............... 9

Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ......................................................... 7

Laughlin Prods., Inc. v. ETS, Inc., 257 F.Supp.2d 863, 866 (N.D. Tex. 2002) ...................... 1

Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990) ............. 1

Local 12, United Rubber Workers, 150 N.L.R.B. 312, *enf'd*, 368 F.2d 12 (5th Cir.1966) .................... 10

McCall v. Southwest Airlines, Co., 2010 WL 3119388 (N.D. Tex) ................................................. 3, 4, 5

McCall v. Southwest Airlines Co., 661 F.Supp.2d 647, 654 (N.D.Tex. 2009) ............... 9, 12, 13, 14, 49

Miranda Fuel Co., 140 N.L.R.B. 181 (1962) ....................................................................... 10

Neely v Delta Brick & Tile Co., 817 F.2d 1224, 1225 (5th Cir. 1987) ........................................ 2, 49

Newell v. Oxford Mgmt. Inc., 912 F.2d 793, 795 (5th Cir. 1990) ............................................. 1

Ondova Ltd. Co. v. Manila Industries, Inc., 513 F.Supp.2d 762, 770-71 (N.D.Tex. 2007) ..................... 4

O'Neill v. ALPA, 939 F.2d 1199, 1203, (5th Cir. 1991) ................................................. 13, 14, 21, 49

RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1290 (5th Cir.1995) ......................................... 4

San Diego Bldg. Trades Counsel v. Garmon, 359 U.S. 236 (1959) ........................................ 10

Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992) ............................ 2

Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 579-81 (1960) ..................................... 20

Thomas v. LTV Corp., 39 F.3d 611 (5th Cir. 1994) .................................................................. 3

Thorn v. Amalgamated Transit Union, 305 F.3d 826, 832-33 (8th Cir. 2002) ................................ 10, 15

United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 66-67 (1981) ......................................... 4

Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 916-18 (1967) ....................................... 8, 10, 13, 14, 21, 49

Yarde v.Good Samaritan Hosp., 360 F.Supp.2d 552, 566 (S.D.N.Y. 2005) ..................................... 10, 15

**STATUTES:**

42 U.S.C. §1981(a) ...................................................................................................... 10, 15

Texas Commission on Human Rights Act, Tex. Lab. Code Ann. § 21.001 et seq. ................................ 10

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* .................................................. 10

**RULES:**

 Federal Rule of Civil Procedure 56 ............................................................................. 1, 2, 5, 14

Defendants United Aerospace Workers Local 848 of the United Automobile, Aerospace & Agricultural Implement Workers of America ("Local 848"), James Russell Strowd, Wendell Helms, and Romeo Munoz (collectively "Defendants"), file this, their Memorandum Brief in Support of Response to Plaintiff's (Motion for) Summary Judgment  (doc.69) and show the Court as follows:

## <u>INTRODUCTION</u>

Blanks moves for summary judgment on a laundry list of alleged claims in this lawsuit. Blanks asserts that there are no material fact disputes and that he is entitled to judgment against Defendants on at least fourteen alleged claims. (doc. 69, PageID 1053-54). As will be fully demonstrated below, Blanks' summary judgment motion ("Motion") is completely devoid of evidentiary support, does not rest on any grounds that could establish any cognizable legal claims as a matter of law and, thus, should be denied in its entirety.  As required by the Court in summary judgment responses, Defendants agree that the live pleadings of the parties are "Plaintiffs Original Complaint" (doc. 1), filed April 28, 2010; and "Defendants' Original Answer to Plaintiff's Complaint" (doc. 11), filed June 18, 2010.

## <u>ARGUMENT</u>

Summary judgment is only appropriate when the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a) (Before December 1, 2010, nearly identical language appeared in FRCP. 56(c)(2));  <u>EEOC v. Agro Distr., LLC</u>, 555 F.3d 462, 469 (5th Cir. 2009). An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." <u>Laughlin Prods., Inc. v. ETS, Inc.</u>, 257 F.Supp.2d 863, 866 (N.D. Tex. 2002). Facts are considered "material" if they "might affect the outcome of the suit under governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The Court first consults the applicable substantive law to ascertain what factual issues are truly material. <u>Lavespere v. Niagara Mach. & Tool Works, Inc.</u>, 910 F.2d 167, 178 (5th Cir. 1990). Next, the Court reviews the evidence on those issues. <u>Id.</u>; <u>Newell v. Oxford Mgmt. Inc.</u>, 912 F.2d 793, 795 (5th Cir. 1990).[1]

---

[1] However, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to

Where a party bears the burden of persuasion at trial and fails to make a showing sufficient to establish the existence of an element essential to his case, there is "a complete failure of proof" and that party cannot obtain summary judgment. *See* Celotex v Catrett, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence--using any of the materials specified in Rule 56(c)--that would entitle it to a directed verdict if not controverted at trial." Id. at 331 (Brennan, J., dissenting).

Because Blanks has the burden of persuasion at trial with respect to every alleged claim upon which he moves for summary judgment in his Motion, he has the burden of presenting evidence that would be sufficient to support a directed verdict in his favor if not refuted at trial. Boeing v. Shipman, 411F.2d 365 (5th Cir.1969) (en banc); Neely v Delta Brick & Tile Co., 817 F.2d 1224, 1225 (5th Cir. 1987) ("Boeing assumes that some evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield to a directed verdict; it is not necessary that the evidence be no more than a scintilla or amount to a claim that frogs fly or stones levitate.").  As will be shown herein, Blanks cannot meet this test and, thus, his Motion must fail.[2]

## I.   THE LEGAL DOCTRINE OF COLLATERAL ESTOPPEL PREVENTS BLANKS FROM ESTABLISHING A REQUIRED ELEMENT OF HIS ONLY REAL ALLEGED CLAIM IN THIS LAWSUIT AND DEFEATS HIS MOTION AS A MATTER OF LAW.

In the "Facts" section of his Motion (doc. 69 PageID 1052-53), Blanks finally owns up to what Defendants have asserted from the start of this litigation: his alleged claims in this lawsuit, if any, arise solely out of Defendants' processing of his grievance under the CBA. Specifically, Blanks complains of what he identifies as three basic wrongs that are at the crux of his lawsuit:  (1) Defendants breached their DFR to him by "mishandling" his grievance, (2) Defendant Local 848 violated the CBA by entering into

---

support" a party's motion for, or opposition to, summary judgment. Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. Forsyth v. Barr, 19 F.3d 1527, 1536 (5th Cir. 1994).

2 Blanks makes much of the fact that he is proceeding *pro se*. (doc. 69 PageID 1051-52). However, Blanks's *pro se* status does not free him from the strictures of Fed.R.Civ.P., Rule 56 nor does it ease his burden on summary judgment in any way. Ellis v. Principi, 246 F. App'x 867, 869 (5th Cir. 2007) ("[P]laintiff's *pro se* status does not exempt her from the usual evidentiary requirements of summary judgment" citing Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995)).

a "private bargaining relationship" with Vought to set aside his grievance, and (3) Defendant Local 848 failed "in a negligent manner" to provide him with a "satisfactory opportunity to vindicate his rights, pursuant to the contracted CBA."  (doc. 69, PageID 1052-53). These "Facts" point inexorably to one conclusion: Blanks' only cognizable legal claim in this lawsuit, if any, is against Defendant Local 848 for breach of the DFR as it relates to the union's handling of his grievance under the CBA.[3]

Given this, Blanks' alleged DFR claim is unquestionably subject to the classic "hybrid" employer breach of contract/union breach of the DFR action legal analysis.  *See* Thomas v. LTV Corp., 39 F.3d 611, 621-22 (5th Cir. 1994). This analytical framework controls whenever a plaintiff's alleged claims against a union all arise out of his contention that the union mishandled his grievance in violation of the CBA. Id. That is ***exactly*** what Blanks alleges here.

Under the "hybrid" employer breach of contract/union breach of the DFR action analysis, an employee must prove two separate but inextricably intertwined causes of action: (1) the employer breached the CBA by (as is the case here) discharging him without just cause and (2) the union breached its DFR to him by mishandling his subsequent grievance under the CBA. Thomas, 39 F.3d at 621; DelCostello v. IBT, 462 U.S. 151, 164-65 (1983); McCall v. Southwest Airlines, Co., 3-08-CV-2000-M, U.S. Dist Ct. N.D. Tx.) (J. Lynn) (Order dated August 10, 2010, doc.91), reported at 2010 WL 3119388 (N.D. Tex).  The employee is free to prove his "hybrid" case via separate lawsuits against the company and the union or via a single lawsuit against one or the other.  Thomas, 39 F.3d at 621 ("[i]f the employee so chooses, [he] may sue one defendant and not the other, *but the case to be proved is the same whether one or both are sued...*" [emphasis added]).

Under either scenario, the employee's burden is the same: "*[u]nless the employee proves both claims*, [breach of the CBA and breach of the DFR,] *neither the claim against the employer nor the claim against the union can stand.*" [emphasis added]. McCall, 2010 WL 3119388, at *2 (citing

_____

3 Thus, for all of the reasons set forth in Sections I.A, I.B, and II of Defendants' Memorandum Brief in Support of Motion to Dismiss and/or For Summary Judgment (doc. 60, PageID 570-73, 581-592), which is fully incorporated herein by reference, each of the alleged claims identified by Blanks in his Motion, except for his alleged DFR claim against Defendant Local 848 only, are preempted and/or barred as a matter of law.

DelCostello , 452 U.S. at 164-65; UPS v. Mitchell, 451 U.S. 56, 66-67 (1981); and Hines v. Anchor Motor Freight, Inc., 424 U.S. 564, 570-71 (1976)). Where a court finds that the employer "did not breach the collective bargaining agreement by terminating" the employee, and that the employer was "entitled to summary judgment on [the employee's] claim for breach of the collective bargaining agreement," the union was also entitled to "Summary Judgment on [the employee's] claim for breach of the duty of fair representation, *without reaching the merits of that claim.*" Id. [emphasis added].  McCall, 2010 WL 3119388, at *2.

      Blanks has chosen the path of filing separate lawsuits—initially against Vought alleging breach of the CBA[4] and then this instant lawsuit against Local 848 alleging breach of the DFR. In the Vought lawsuit, the court, in granting summary judgment to the employer, found that "Blanks also claims breach of contract arising out of his union's collective bargaining agreement" and that he was attempting to assert an alleged claim under Section 301 of the Labor Relations Management Act. (Blanks v. Vought, Civ.No. 3:09-CV-695-K, doc. 127 PageID 2125-26). The court then granted Vought summary judgment on Blanks' "claim for breach of contract." (*Id*.). Blanks is now collaterally estopped from re-litigating this issue here.[5] Thus, as a matter of law, Blanks cannot establish the requisite breach of contract claim against Vought element of his "hybrid" DFR claim.

      This is the situation found in the McCall case. Like in McCall, 2010 WL 3119388, at *2, as a matter of law, Blanks cannot prove (because he is collaterally estopped from doing so) an essential

---

4 See case file in Blanks v. Vought, (Civil Action No. 3:09-CV-695-K, U.S. Dist. Ct. N.D. Tex.): "Judgment" (doc. 131) and "Order Accepting The Findings, Conclusions, and Recommendation of the United States Magistrate" (doc. 130), reported at 2010 WL 4321580 (N.D. Tex), both entered on October 26, 2010, and the "Findings, Conclusions, and Recommendation of the United States Magistrate" (doc. 127), reported at 2010 WL 4315530 (N.D. Tex), entered on October 12, 2010. That decision is now pending appeal to the Fifth Circuit. Blanks v Vought, No 10-111103.

5 Collateral estoppel applies to preclude Blanks from re-litigating here the issue as to whether Vought violated the collective bargaining agreement by discharging him because, as evident from a review of the Magistrate's Order in Blanks v. Vought, 2010 WL 4315530, at *5, accepted by the District Court, 2010 WL 4321580 at *1, (1) that issue is identical to the one involved in his prior action against Vought; (2) that issue was actually litigated in the prior action; and (3) the determination of that issue – adverse to Blanks – in the prior action was a necessary part of the judgment in the prior action. Ondova Ltd. Co. v. Manila Industries, Inc., 513 F.Supp.2d 762, 770-71 (N.D.Tex. 2007) (citing RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1290 (5th Cir.1995); and In re Davis, 3 F.3d 113, 114 (5th Cir.1993)).

element of his "hybrid" breach of the DFR claim against Local 848: the employer's breach of the CBA. Therefore, like the union in <u>McCall</u>, here Local 848, and all Defendants, are entitled to summary judgment in their favor on Blanks' claim that the Defendants violated the DFR by mishandling his grievance; the Court need not reach the merits of the DFR claim. <u>Id</u>. This inescapable result forecloses any possibility that Blanks could obtain summary judgment against Defendants. As such, Blanks' Motion must be denied in its entirety.

## II.    AS A MATTER OF LAW, BLANKS CANNOT OBTAIN SUMMARY JUDGMENT ON ANY OF HIS ALLEGED CLAIMS AND HIS MOTION MUST BE DENIED.

In the event that the Court reaches the merits of Blanks' Motion, for the reasons that follow, as a matter of law Blanks is unable to establish his entitlement to judgment as to any of his alleged claims:

### A.    *Blanks is unable to establish any undisputed material facts that would support his alleged claims.*

The sole evidentiary sources for the alleged facts upon which Blanks bases his Motion are his Declaration attached to the end of his Motion (doc. 69, PageID 1085-89) and an "Appendixs" [sic] (doc. 68). As fully set forth in Defendants' concomitantly filed Motion to Strike Plaintiff's Summary Judgment Evidence and Brief in Support (which Motion to Strike is fully incorporated herein by reference), Blanks' Declaration and "Appendixs" evidence fails to meet the requirements of Fed.R.Civ.P., Rules 56(c)(2) & (4). Thus, they cannot form the evidentiary basis necessary for Blanks to prove the elements of each of his alleged claims nor establish the absence of genuine issues of material fact as to each claim. Without this evidentiary basis, as a matter of law, Blanks cannot obtain summary judgment on any of his claims as he presents no other evidentiary sources in support of his claims.

In their concomitantly filed Motion to Strike Plaintiff's Summary Judgment Evidence and Brief in Support, Defendants have moved to strike Blanks' Declaration in its entirety and most of the documents that Blanks includes in his "Appendixs."   The fact that Defendants have not moved to strike certain of the "Appendixs" documents is not a concession that those documents support his Motion.

More specifically, Defendants did not move to strike the following documents Blanks included

in his "Appendixs": Nos. 2, 8-15, 18-20, 23. (doc. 68 PageID 989-90, 996-1006, 1010-18, 1048-49).

Despite the fact that Defendants did not move to strike these documents, the documents substantively do

not evidence any legal claims. For example, No. 2 is a complete copy of Blanks' grievance form after it

had been fully processed through the steps of the CBA's grievance procedure and reflects the dates that

the grievance was processed at each of the various grievance steps. It is that copy which Defendants

submitted in support of their motion for summary judgment. As discussed in detail in section II.D.(2)

below, Blanks apparently offers No. 2, together with No. 1 (a copy of the grievance at an earlier step of

the procedure), as purportedly being evidence that Defendants somehow dishonestly or fraudulently

processed his grievance. However, as shown below, Blanks submits no competent summary judgment

evidence that could establish this allegation as an undisputed fact.  As such, this document does not

establish any element of any possible claim.

       Nos. 8-14 are documents reflecting communications between Blanks and Defendants discussing

Helms' decision to withdraw Blanks' grievance and Blanks' subsequent appeal of that decision within

the union hierarchy. As these documents plainly reflect, Blanks' appeal within the union was duly

considered and he presented no new or additional evidence during the course of his appeal that would

have alerted Defendants that the decision to withdraw his grievance in the good faith belief it lacked

merit to arbitrate violated any duty that they owed him or that any right he possessed may have been

violated. As such, these documents do not establish any element of any possible claim.

       No. 15 is a notice of electronic filing sheet from Blanks' lawsuit against Vought that he offers as

evidence that his is not a "hybrid" DFR case. However, nothing in this document counters the

indisputable fact that, as a matter of law, Blanks' allegations conclusively define his one real alleged

claim in this lawsuit as a "hybrid" DFR claim. As discussed in detail above, the fact that the employer-

side and union-side of Blanks' alleged "hybrid" DFR claim have been litigated in separate lawsuits does

not mean that this is not an alleged "hybrid" DFR claim. As such, this document does not establish any

element of any possible claim.

Nos. 18-20 and 23 are various pages of the CBA and union constitution. These documents do not reflect that the decision to with draw and not arbitrate his grievance violated any duty that Defendants owed him or that any right he possessed was violated by Defendants. As such, these documents do not establish any element of any possible claim.

Aside and apart from the foregoing, Blanks' Motion is shot through with unsubstantiated allegations, naked conclusions, and self-serving narratives and speculations that are unanchored to admissible evidence. These self-serving ramblings are not admissible evidence that establish elements of each alleged claim nor can they establish the absence of genuine issues of material fact. Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence.").

At bottom, Blanks fails to submit any factual evidence that would establish beyond dispute each element of any alleged legal claim he identifies in his Motion. For this reason alone, his Motion must be denied in its entirety.

**B.      The "Facts" Blanks sets forth in Section 5 of his Motion (doc. 69, Page ID 1052-53) affirmatively precludes every alleged claim against every Defendant as identified by Blanks, except his alleged DFR claim against Defendant Local 848.**

As discussed in detail in section I above, the "Facts" section of Blanks' Motion conclusively establishes that his only alleged claim in this lawsuit, if any, is that Local 848 breached the DFR.  Thus, for all of the reasons set forth in Section II of Defendants' Memorandum Brief in Support of Motion to Dismiss and/or For Summary Judgment (doc. 60, PageID 581-592), which is fully incorporated herein by reference, each of the alleged claims identified by Blanks in his Motion, except for his alleged DFR claim against Defendant Local 848 only, are preempted and/or barred as a matter of law. As such, Blanks' Motion must be denied on this ground as to each and every claim he alleges--except for his alleged DFR claim against Defendant Local 848 (which is further discussed in Section II.D, below).

As discussed above, Blanks complains of what he sees as three wrongs that are at the crux of his lawsuit:  (1) Defendants breached their DFR to him by "mishandling" his grievance, (2) Defendant Local

848 violated the CBA by entering into a "private bargaining relationship" with Vought to set aside his grievance, and (3) Defendant Local 848 failed "in a negligent manner" to provide him with a "satisfactory opportunity to vindicate his rights, pursuant to the contracted CBA."  (doc. 69, PageID 1052-53). However, only the first, breach of the DFR, implicates a legal claim the law recognizes.

As to the second alleged wrong, Blanks cites no legal authority supporting the proposition that a union's decision to withdraw a grievance after attempting to negotiate a settlement of that grievance with the company amounts to a "private bargaining relationship" that is somehow unlawful. Moreover, there is no evidence that Blanks' grievance was "settled" in the sense of Local 848 and Vought reaching a mutually agreed resolution after give-and-take bargaining as he suggests. Rather, the summary judgment evidence conclusively and indisputably shows that Local 848 had a practice of using the term "settled" as the label for grievances that were unilaterally withdrawn by decision of the UAW International Union representative as not meriting submission to arbitration. (Strowd Decl. ¶ 12(doc. 61 PageID 607); Helms Decl. ¶¶ 18-19 (doc. 61 PageID 684-85). This is confirmed by the fact that Blanks fails to present evidence of any agreement between Local 848 and Vought to "set aside his grievance."[6] Thus, even assuming some such cause of action exists, there is no evidence that Local 848 in fact entered into "a private bargaining relationship" with Vought that resulted in an agreement to set aside Blanks' grievance. For this reason, the second alleged wrong that Blanks identifies does not give rise to any recognized legal claim against the Defendants.

Finally, as to the third alleged wrong, Blanks contends that Defendant Local 848 negligently failed to provide him with "a satisfactory opportunity to vindicate his rights" under the CBA. However, as a matter of law, given the type of CBA at issue here, Blanks had no legal right to "a satisfactory opportunity to vindicate his rights"; the power to invoke the higher stages of the grievance process rested solely with the union. <u>Vaca</u>, 386 U.S. at 185. Moreover, mere negligence is insufficient as a matter of

---

6 Indeed, the ***only*** competent summary judgment evidence before the Court on this issue conclusively proves that the decision to not submit Blanks' grievance to arbitration was unilaterally made by Defendant Helms in his capacity as the UAW International Union representative without any agreement or settlement with Vought. (Helms Decl. ¶¶ 16-17 & 21, doc. 61 PageID 683-86).

law to form the factual basis for a DFR claim. <u>McCall v. Southwest Airlines, Co.</u>, 661 F.Supp.2d 647, 654 (N.D.Tex. 2009) (negligence is insufficient to support a finding of breach DFR, *citing* <u>Landry v. The Cooper/T. Smith Stevedoring Co.</u>, 880 F.2d 846, 852 (5th Cir.1989)). And, in any event, Blanks does not present evidence of negligence on the part of Defendant Local 848 upon which a claim could rest. Indeed, as conclusively shown in III.A. ¶ ¶ 42-48 (pgs 42-44, *infra*.) Blanks was afforded the right, of which he availed himself, to appeal Helms' decision not to arbitrate his grievance to the UAW International pursuant to Article 33 of its Constitution. Upon due consideration that appeal it was denied in a written decision and Blanks presents no evidence that he was denied any right to which he was entitled under the CBA or the UAW Constitution to "vindicate his rights."

      **C.**      ***Even assuming, arguendo, that each of Blanks' alleged claims, except his alleged DFR claim against Defendant Local 848, is not otherwise preempted or barred, Blanks fails to conclusively prove each element of each claim and cannot demonstrate his entitlement to judgment as to any of these alleged claims.***

In the "History" section of his Motion, Blanks lists fourteen (mis-numbered as fifteen) alleged causes of action.[7] (doc. 69 PageID 1053-54). Setting aside Blanks' alleged breach of the DFR claim (which is addressed in section II.D below), Defendants point out the factual and legal deficiencies of each such alleged claim that preclude summary judgment in favor of Blanks as follows:

    *(1)*    *"Breach of the Unions Fiducuary Duties" [sic].* In his Motion, Blanks offers no evidence and cites no legal authority that would impose any duty on Local 848 in the context of this case, fiduciary or otherwise, other than that imposed by the DFR. Absent evidence of or authority for imposing a duty, there can be no cognizable claim for a breach of duty. Thus, as a matter of fact and as a matter of law, no claim exists here for which Blanks would be entitled to judgment.

    *(2)*    *"Violation of the Collective Bargains Agreement Article V" [sic].* As discussed in detail in section I above, any breach of the CBA claim that Blanks might have would lie, if it did at all, against Vought, not Defendants. Further, as demonstrated in section II.D below, as a matter of fact and as a

---

[7] Blanks later sets forth a second listing of his alleged claims (doc. 69 PageID 1054-55) that duplicates this listing.

matter of law Defendants did not breach the CBA in their processing of Blanks' grievance. Thus, as a matter of fact and as a matter of law, no claim exists here for which Blanks would be entitled to judgment.

        *(3)*     *"Unfair Labor Practices Claim."*  To the extent Blanks intends to assert an unfair labor practice claim under the National Labor Relations Act against Defendants in this litigation, such claim is preempted as the NLRA grants exclusive jurisdiction over such claims to the National Labor Relations Board ("NLRB"). "As a general rule, neither state nor federal courts have jurisdiction over suits directly involving 'activity [which] is arguably subject to § 7 or § 8 of the Act.'" Vaca v Sipes, 386 U.S. at 178-9, *citing* San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959); Miranda Fuel Co., 140 N.L.R.B. 181 (1962); Local 12, United Rubber Workers, 150 N.L.R.B. 312, *enf'd*, 368 F.2d 12 (5th Cir.1966). Thus, as a matter of fact and law, no claim exists here for which Blanks would be entitled to judgment.

        *(4)*     *"Discrimination."*[8]  As discussed in section II.D.(1) below, there is no summary judgment evidence which would support a finding that Defendants acted with discriminatory intent in processing Blanks' grievance. Blanks presents no evidence of any discriminatory intent or animus by Defendants in their processing of his grievance. To the extent that Blanks asserts Defendants had some duty to investigate and rectify perceived racial discrimination or retaliation by Vought, no such duty exists.  *See* Thorn v. Amalgamated Transit Union, 305 F.3d 826, 832-33 (8th Cir. 2002), *citing* Anjelino, 200 F.3d at 95-96 ("Though the Unions were prohibited from causing or assisting unlawful discrimination by [plaintiff's] employer, nowhere in either [Title VII or the Minnesota Human Rights Act] do we find language imposing upon unions an affirmative duty to investigate and take steps to remedy employer discrimination."); Yarde v. Good Samaritan Hosp., 360 F.Supp.2d 552, 566 (S.D.N.Y. 2005) (rejecting 42 U.S.C. §1981(a) hostile work environment claim

---

8 It is unclear as to exactly what Blanks means by "discrimination," but presumably this refers to racial discrimination under Title VII of the Civil Rights Act of 1964, the Texas Labor Code Section 21.001 et seq., and/or 42 USC §1981(a).

on grounds that employer, not union, has duty to maintain environment free of discrimination).
Thus, as a matter of fact and as a matter of law, no claim exists here for which Blanks could obtain
judgment.

(5)    *"Contract Fraud."*  As discussed in detail in section I above, any breach of the CBA
claim that Blanks might have would lie, if it did at all, against Vought, not Defendants. Further, as
demonstrated in section II.D below, as a matter of fact and as a matter of law Defendants did not breach
any contract in their processing of Blanks' grievance. Further, as discussed in detail in section II.D.(2)
below, there is no summary judgment evidence that Defendants acted dishonestly or fraudulently in
processing Blanks' grievance. Blanks presents no evidence of any material misrepresentations made by
Defendants upon which he relied to his detriment. Thus, as a matter of fact and as a matter of law, no
claim exists here for which Blanks would be entitled to judgment.

(6)    *"Contract Violation of the labor Code 305"* [sic].  Defendants do not know to what this
refers.  In any event, as discussed in detail in section I. above, any breach of the CBA claim that Blanks
might have would lie, if it did at all, against Vought, not Defendants. Further, as demonstrated in section
II.D below, as a matter of fact and as a matter of law Defendants did not breach the CBA in their
processing of Blanks' grievance. Thus, as a matter of fact and as a matter of law, no claim exists here for
which Blanks would be entitled to judgment.

(7)    *"Collective Bargaining Agreement (CBA), fiduciary duty."* In his Motion, Blanks offers
no evidence and cites no legal authority that would impose any duty on Local 848 or the individual
Defendants in the context of this case, fiduciary or otherwise, other than that imposed by the DFR.
Absent evidence of or authority for imposing a duty, there can be no cognizable claim for a breach of
duty. Thus, as a matter of fact and as a matter of law, no claim exists here for which Blanks would be
entitled to judgment.

(8)    *"Malpractice."*  In his Motion, Blanks offers no evidence and cites no legal authority
that would impose any duty on Local 848 or the individual Defendants in the context of this case,

malpractice or otherwise, other than that imposed by the DFR. Absent evidence of or authority for imposing a duty, there can be no cognizable claim for a breach of duty. Thus, as a matter of fact and as a matter of law, no claim exists here for which Blanks would be entitled to judgment.

(9)      *"Breach of Contract."*  As discussed in detail in section I. above, any breach of the CBA claim that Blanks might have would lie, if it did at all, against Vought, not Defendants. Further, as demonstrated in section II.D below, as a matter of fact and as a matter of law Defendants did not breach any contract in their processing of Blanks' grievance. Thus, as a matter of fact and as a matter of law, no claim exists here for which Blanks would be entitled to judgment.

(10)      *"Breach of Employment Contract."*  There is no summary judgment evidence that Blanks had an enforceable employment contract with Defendants, or anyone else for that matter. And, as discussed in section I. above, any claim for breach of the CBA would lie, if at all, against Vought, not Defendants. Defendants could not have unlawfully breached an employment contract with Defendants that did not exist.  Thus, as a matter of fact and as a matter of law, no claim exists here for which Blanks would be entitled to judgment.

(11)      *"Negligence."*  Blanks offers no evidence and cites no legal authority that would impose any duty on Local 848 or the individual Defendants in the context of this case, be that an actionable negligence duty of care claim or otherwise, other than that imposed by the DFR, where negligence is insufficient to support a claim. McCall, 661 F.Supp.2d at 654. Absent evidence of or authority for imposing a duty, there can be no cognizable claim for negligent breach of duty. Thus, as a matter of fact and law, no claim exists here for which Blanks would be entitled to judgment.

(12)      *"Fraud."* As discussed in detail in section II.D.(2) below, there is no summary judgment evidence that Defendants acted dishonestly or fraudulently in processing Blanks' grievance. Blanks presents no evidence of any material misrepresentations made by Defendants upon which he relied to his detriment. Thus, as a matter of fact and as a matter of law, no claim exists here for which Blanks would be entitled to judgment.

(13)    "*Damages.*"[9]  Monetary damages arising out of a breach of the DFR are limited to the increase in backpay, if any, owed by the employer to the employee for discharging him in violation of the CBA that results from the union's mishandling of the grievance. Bowen v USPS, 459 U.S. 212, 213 (1983). Such damages are precluded here, as a matter of law, due to collateral estoppel as discussed in section I above. And, in any event, Blanks' Motion is defective on this issue in that he presents no evidence apportioning his alleged damages between the employer and union as Bowen requires. Id.

> **D.     Blanks is unable to conclusively prove each element of his alleged DFR claim against Defendant Local 848 and nor can he establish his entitlement to judgment as a matter of law as to this alleged claim.**

A union breaches the DFR only if its conduct toward a member of the bargaining unit is "arbitrary, discriminatory, or in bad faith," and only if that conduct is so far outside a "wide range of reasonableness" that it could be termed irrational, illogical, or egregious. ALPA v. O'Neill, 499 U.S. 65, 67 (1991); Vaca v. Sipes, 386 U.S. 171, 190-92 (1967); Ford v. Huffman, 345 U.S. 330, 338 (1953); O'Neill v. ALPA, 939 F.2d 1199, 1203, (5th Cir. 1991); and McCall, 661 F.Supp.2d at 654. Thus, a plaintiff asserting a DFR claim must present the following two forms of evidence: (1) evidence of the subjective mental state or motive (*i.e.*, arbitrary, discriminatory or bad faith) of the union officials with responsibility for processing his grievance and (2) evidence of the objective lack of reasonableness of the conduct of those union officials with responsibility for processing his grievance.

As the Fifth Circuit held on remand in O'Neill v. ALPA, the standard for breach of the DFR is a "demanding standard" and the union conduct complained of must be "sufficiently egregious" to be considered a violation of the duty. O'Neill, 939 F.2d 1199, 1203 (5th Cir. 1991). A union's conduct is considered "arbitrary" in breach of the duty "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." [emphasis added] O'Neill, 499 U.S. at 67 (quoting Ford v.

---

9 Defendants are unclear as to exactly what damages Blanks seeks to recover as his Motion is rambling and incoherent on this issue. (doc. 69, PageID 1080-82). However, because Blanks' only possible claim in this lawsuit is against Local 848 for breach of the DFR, he could not recover more than what that cause of action permits. To the extent Blanks seeks sanctions against Defendants for alleged discovery abuses, the Court has already rejected Blanks' position in prior rulings.

Huffman, 345 U.S.330, 338 (1953); McCall, 661 F.Supp.2d at 654. While a union must act

consistently with respect to each member, Vaca, 386 U.S. at 191, a union's conduct is considered

"discriminatory" in breach of the duty only if the complained of conduct reaches a level that it could be

considered "invidious." O'Neill, 499 U.S. at 81; McCall, 661 F.Supp.2d at 654. Finally, with respect to

"bad faith" the Fifth Circuit has described this as a "demanding standard" requiring proof of conduct that

is "sufficiently egregious" or so "intentionally misleading" as to be "invidious," or as to evince a purpose

to intentionally harm the member or membership. O'Neill, 939 F.2d at 1203-04.

Blanks' Motion fails the DFR test. The grounds Blanks advances in support of his alleged DFR

claim are scattered throughout his Motion, but fall into five basic categories: (1) Local 848 had

discriminatory or hostile motives towards him while processing his grievance; (2) Local 848's

processing of his grievance was negligent, dishonest or perfunctory; (3) Local 848 failed to timely

process his grievance in rigid lockstep within the time frames expressly set forth in the CBA; (4) Local

848 failed to take his allegedly meritorious grievance to arbitration; and (5) Helms and Strowd allegedly

have a track record of not arbitrating grievances. Each ground is addressed in turn as follows:

> *(1)    No admissible summary judgment evidence supports Blanks' allegations  that Local 848
> had a discriminatory or hostile motive towards him while processing his grievance.*

Blanks alleges that Local 848 had a discriminatory motive towards him that was based on his

race, African-American. (doc. 69 PageID 1061, 1078-79).  The only "evidence" Blanks offers in support

of this allegation is averment No. 22 in his Declaration. (doc. 69 PageID 1087).  As discussed in Section

II.A above (and in Defendants' concomitantly filed Motion to Strike Plaintiff's Summary Judgment

Evidence and Brief in Support), Blanks' allegations in his Declaration do not  meet the requirements of

Fed.R.Civ.P., Rules 56(c)(2) & (4). This is particularly true of averment No. 22 in his Declaration,

which is plainly not based on Blanks' personal knowledge.[10] In addition, Blanks' factual allegations in

the "Background" section of his Motion on this issue are devoid of evidentiary support. (doc. 69 PageID

---

10 Affidavits submitted by *pro se* litigants "must affirmatively show the affiants' competence to testify as to the matters
stated therein and that the facts stated in the affidavits are based on the affiants' personal knowledge." Barker v. Norman,

1054-55, 61). As such, this allegation cannot be a ground upon which summary judgment could be granted to Blanks.

Additionally, Blanks makes a passing reference in his Motion to racial discrimination under 42 U.S.C. § 1981(a). (doc. 69 PageID 1073). Despite Blanks' superficial contentions relative to this alleged claim, which are plainly insufficient to establish his entitlement to judgment, Defendants will address it on the merits here. A labor union may be liable under § 1981(a) if it intentionally fails or refuses to file a grievance for race discrimination after being asked by a member to do so or if the union causes or attempts to cause an employer to discriminate on the basis of race. Goodman v. Lukens Steel Co., 482 U.S. 656, 667-69 (1987); Carter v. Chrysler Corp., 173 F.3d 693, 703-04 (8th Cir. 1999). To establish liability under the latter theory, a plaintiff must show that "the Union *itself* instigated or actively supported the discriminatory acts" made the basis of the suit. Anjelino v. New York Times Co., 200 F.3d 73, 95-96 (3d Cir. 1999) (emphasis in original).

Blanks fails to provide any evidence of race discrimination by Defendants, in admissible form, that would support a § 1981(a) claim. Blanks does not allege and does not offer any evidence establishing that he requested Defendants to file a grievance alleging discrimination on account of his race and that Defendants refused to do so. Nor does Blanks present any evidence in admissible form that Defendants caused or assisted unlawful discrimination by Vought or anyone else. *See* Thorn v. Amalgamated Transit Union, 305 F.3d 826, 832-33 (8th Cir. 2002), *citing* Anjelino, 200 F.3d at 95-96 ("Though the Unions were prohibited from causing or assisting unlawful discrimination by [plaintiff's] employer, nowhere in either [Title VII or the Minnesota Human Rights Act] do we find language imposing upon unions an affirmative duty to investigate and take steps to remedy employer discrimination."); Yarde v. Good Samaritan Hosp., 360 F.Supp.2d 552, 566 (S.D.N.Y. 2005) (rejecting section 1981(a) hostile work environment claim on grounds that employer, not union, has duty to maintain environment free of discrimination). Thus, no § 1981(a) claim exists here.

---

651 F.2d 1107, 1123 (5th Cir.1981) (citing Fed. R. Civ. P. 56(e)).

Memorandum Brief in Support of Response to Plaintiff's (Motion for) Summary Judgment  (doc.69) – Page 15

Finally, Blanks alleges that Local 848 harbored hostility towards him because he desired to work both at Vought and Lockheed Martin at the same time. (doc. 69 PageID 1066-67). Once again, no competent summary judgment evidence supports this factual allegation. The only "evidence" Blanks offers in support of this allegation is "document" No. 16 of his "Appendixs."[11] (doc. 68 PageID 1007). However, as fully discussed in Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence and Brief in Support (which is incorporated herein by reference), this "document" is completely inadmissible because, among other things, it is not authenticated and contains multiple levels of hearsay statements made by various unknown declarants. As such, this factual allegation is without evidentiary support and, thus, cannot be a ground upon which summary judgment could be granted in Blanks' favor.

     (2)      *No admissible summary judgment evidence supports Blanks' allegations that Local 848's conduct in the processing of his grievance was negligent dishonest or perfunctory.*

Blanks alleges that Local 848 was negligent, dishonest or perfunctory in its processing of his grievance. (doc. 69 PageID 1052-53, 1071-76). However, these are baseless allegations unsupported by any competent summary judgment evidence. More specifically, Blanks does not dispute Defendants' description of their processing of his grievance as set forth in Defendants' summary judgment motion and supporting appendices (and restated in section III, below). Defendants' summary judgment evidence sets forth, in painstaking detail, each and every action they undertook in processing Blanks' grievance, from the moment he first walked into the union hall on July 18, 2008 and announced his desire to file a grievance over his discharge all the way through to his final appeal to the president of the UAW International Union.[12] With one exception (further discussed below), Blanks does not make any real effort to dispute the actions Defendants undertook in processing his grievance.

Instead, Blanks charts a different course. He argues at length in his Motion that Defendants' processing of his grievance was negligent, dishonest or perfunctory because he was not guilty of falsifying a workers' compensation claim and Defendants mishandled his meritorious grievance by

---

11 This "document" appears to be excerpts from two separate documents that Blanks copied onto a single sheet of paper.
12 See, *e.g.*, Strowd Decl. ¶¶ 16-44, doc. 61 PageID 608-624 and Helms Decl. ¶¶ 11-29, doc. 61 PageID 675-690.

untimely processing his grievance and, thus, he is entitled to judgment. (doc. 69 PageID 1065-79). However, Defendants' summary judgment evidence describing the actions they undertook (which Blanks plainly accepts as true here) do not support his allegations that they processed his grievance in a negligent, dishonest or perfunctory manner. Indeed, the evidence proves the opposite is true.

Moreover, as discussed in section I. above, Blanks' is collaterally estopped from proving that he was discharged without just cause. Thus, there is not, indeed cannot be, any summary judgment evidence before this Court supporting Blanks' allegation that his grievance was meritorious. Therefore, this allegation cannot support Blanks' assertion that Defendants processed his grievance in a negligent, dishonest or perfunctory manner.

Blanks' argument regarding the time frame in which Defendants processed his grievance is also without evidentiary support as demonstrated in section II.D.(3) below. Therefore, this allegation also cannot support Blanks' assertion that Defendants processed his grievance in a negligent, dishonest or perfunctory manner.

Finally, Blanks suggests the appearance of dishonesty in connection with signatures on his grievance form. (doc. 69 PageID 1071). More specifically, he attaches in his "Appendixes" two copies of his written grievance form. The first (document No. 1, doc. 68 PageID 989) was apparently produced by Vought in Blanks' sister lawsuit against the company. This copy does not contain Strowd's signature on the bottom reflecting his appeal of the grievance to the pre-arbitration review step. The second (document No. 2, doc. 68 PageID 990) was produced by Defendants in the case at bar. This copy contains Strowd's signature reflecting his appeal of the grievance to the pre-arbitration step on January 20, 2009. The difference in these two copies of Blanks' grievance merely reflects the point in time the copy was made: No. 1 being copied before the grievance was appealed to the pre-arbitration review step and No. 2 after its appeal. Nevertheless, from this, Blanks speculates or infers that Defendant Local 848 engaged in some sort of dishonesty or fraud in processing his grievance. However, speculation is not summary judgment evidence and, on summary judgment, inferences are indulged in favor of the non-

movant.

Moreover, there is nothing dishonest or fraudulent about the final signature line differences in these two documents. The disposition blocks and signature lines on Blanks' grievance form are only filled in as each step of the grievance procedure is completed. Thus, it is unsurprising that Vought retained and produced to Blanks a copy of the grievance form in an earlier iteration that did not contain all of the signatures found on the final version of the grievance form that were subsequently added as time went by and additional grievance steps were completed. This does not give rise to an inference of dishonesty or fraud.  There is no summary judgment evidence of dishonesty as Blanks alleges.

(3)     *As a matter of fact and as a matter of law, Local 848 timely processed Blanks' grievance in complete conformance with the CBA.*

Blanks alleges that Local 848 breached its DFR to him by failing to process his grievance in rigid lockstep with the time frames set forth in the CBA for each grievance step. (doc. 69 PageID 1066,1071). Blanks is wrong, on both the facts and the law.

The problem with Blanks' allegation is threefold: (1) the CBA expressly allowed Defendants and Vought to extend the CBA defined grievance Step timelines by agreement—and they did so here, (2) federal labor law permits the union and company to rely upon long standing past practice (i.e., "common law of the shop") to control the timely submission of grievances beyond the timeframes defined in a CBA—and they did so here, and (3) Blanks suffered no harm resulting from the timeframe in which Defendants processed his grievance here.

To begin with, as a matter of fact, two sections of the CBA completely dispose of Blanks' contention here. Specifically, Article V Section 6.e provides that when the union does not receive a disposition within the time limits defined in the CBA it can be appealed to the next step, not that it is granted or denied; and Article V Section 6.f expressly permits Local 848 and Vought to extend grievance time limits by mutual agreement.[13]  These provisions of the CBA defeat Blanks' contention that the

---

13 As pertinent here, Article V Section 6 "General Provisions of the Grievance Procedure" provides as follows:
    "e. If the Union does not receive a disposition to a grievance within the time limits set forth herein, the grievance may be appealed to the next step.

Third Step had to be completed within five days and because it was not he is entitled to judgment.

There is no dispute as to the timeframes that Defendants processed Blanks' grievance. Specifically, as the grievance involved employee discipline it was initiated at the Second Step per Article V Section 10.f on July 18, 2008, then upon denial by Vought on July 21, 2008 it was submitted to the Third Step by Local 848 on July 24, 2008, where it was again denied by Vought on September 2, 2008—approximately a month and half later, the timing at each step by mutual agreement or past practice of the parties. (doc. 61 PageID 613-15, 622; doc. 61 PageID 633; 61 PageID 684). Further, that Local 848 did not receive a disposition of the grievance from Vought within five days did not mean that Blanks' grievance was automatically upheld as he seems to insinuate; to the contrary, Article V Section 6.e provided that the grievance may only be appealed to the next grievance step, effectively treating it as if it had been denied by Vought. Thus, whether the Third Step of Blanks' grievance was completed within five days of the initial July 24, 2008 submission or, as it was here, a month and a half later by agreement or practice, the result would be the same under the CBA: the grievance could be appealed to the next step—the Prearbitration Review Step.  And, in fact, that is exactly what happened — the Plant Grievance Committee voted to appeal Blanks' grievance and Grievance Committee Chairman Strowd signed the grievance on January 20, 2009 appealing it to the Prearbitration Review Step. (doc. 61 PageID 615).

Blanks further complains that Defendants breached their DFR to him by sitting on his grievance for a "year and half" (*i.e.*, September 2, 2008 until January 20, 2009) at the Prearbitration Review Step before finally withdrawing it.  Here again, Blanks' argument is defeated by Article V Section 6.f as it is undisputed that Strowd — having discretion at the Prearbitration Review Step after the grievance had again been denied by Vought to withdraw the grievance, submit it to UAW International Representative Helms for final decision on arbitration or hold it in abeyance by agreement pending further discussions with Vought — chose to hold the grievance in abeyance by mutual agreement with Vought and used that extra time to try and negotiate a resolution of the grievance that would allow Blanks to remain employed.

f. The time during which a grievance must be dispositioned or appealed may be extended by mutual agreement."

(doc. 61 PageID 619-22).

In addition to the foregoing textual basis in the CBA that permitted Defendants to process Blanks' grievance in the timeframes they did, Blanks' grievance was, as a matter of law, processed in accordance with the usual and long-term practice between Local 848 and Vought in their administration of the CBA's grievance mechanism. (doc. 61 PageID 603-07, 622; doc. 61 PageID 684). Federal courts have long recognized that this "common law of the shop" may dictate the rights and duties of the parties to a CBA. See, e.g., Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 579-81 (1960). As such, Defendants processing of Blanks' grievance was, as a matter of law, in complete conformance with Local 848's and Vought's longstanding past practice, or the "common law of the shop."

Last, but not least, Blanks' position is defeated by the undisputed fact that he suffered no harm or prejudice as a result of the timeframe in which Defendants processed his grievance. It is undisputed that the month and half processing of Blanks' grievance at the Third Step had no effect whatsoever on his grievance; it was moved forward to the next step no differently than if it had been denied by Vought within five days. With respect to Defendants' processing of Blanks' grievance at the Prearbitration Review Step for a year and half, it is undisputed that Blanks suffered no prejudice to his grievance at that Step or thereafter. As Helms has averred, without dispute, in his Declaration "No issue was ever raised by Vought regarding the procedural timeliness or arbitrability of Blanks' grievance…" (doc. 61-3 PageID 684). Therefore, as a matter of fact and as a matter of law, Local 848 timely processed Blanks grievance at every step and did not breach its DFR.

> (4)     *As a matter of fact, Blanks' grievance was not meritorious and, even if it were, as a matter of law, Local 848 did not violate its DFR to Blanks by not submitting his grievance to arbitration.*

Next, Blanks contends that Defendants breached their DFR because his grievance was meritorious and they settled it (by withdrawing it) short of arbitration. (doc. 69 PageID 1065-67).

However, as discussed in sections I. and II.D.(2) above, Blanks is collaterally estopped from re-litigating this issue here.

Moreover, even assuming, *arguendo*, the merits of Blanks grievance is a live issue here and Blanks could conclusively prove that his grievance had some merit, it has long been the law that a union member has no absolute right to have his grievance taken to arbitration and the union may decline to take an arguably meritorious grievance to arbitration. Vaca v Sipes, 386 U.S. 171, 191-92 (1967) ("a union does not breach its DFR, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration."). Blanks presents no legal authority that contradicts this statement of the controlling law.

In any event, what Blanks must prove to sustain his DFR claim (on the union side of the "hybrid" liability inquiry) is, not simply that his grievance was meritorious, but that Local 848's conduct towards him (1) was based on an "arbitrary, discriminatory, or in bad faith" motive and (2) that conduct was so far outside a "wide range of reasonableness" that it could only be termed irrational, illogical or egregious. ALPA v. O'Neill, 499 U.S. 65, 67 (1991); Vaca v. Sipes, 386 U.S. 171, 190-92 (1967); Ford v. Huffman, 345 U.S. 330, 338 (1953); O'Neill v. ALPA, 939 F.2d 1199, 1203 (5th Cir. 1991).

As Defendants have proven to the Court, without any contradictory evidence from Blanks, Helms determined at the time, based on his review of the Local 848's grievance file, Vought's documents on the matter, discussions with Strowd and Munoz, and his own experience, that Blanks' grievance was not meritorious, that an arbitration of Blanks' grievance would not be successful and, for this sole reason, withdrew the grievance prior to submission to arbitration. (Helms Decl. ¶16, doc. 61 PageID 683-84). There can be no question that, given the information available to Helms at the time and the undisputed information and factors he then had before him, upon which he based his decision, that his decision to withdraw Blanks' grievance and not submit it to arbitration was reasonable, rational and logical. As such, Blanks is not entitled to judgment and his Motion must fail.

    *(5)    No summary judgment evidence supports Blanks' allegation that Helms and Strowd have a track record of not taking grievances to arbitration nor does Blanks present any legal authority that the union's arbitration track record entitles him to judgment as a matter of law.*

Blanks contends that Defendants breached their DFR to him because, allegedly, Helms and Strowd have never taken a case to arbitration in their careers. (doc. 69 PageID 1067-69). Blanks' contention is without evidentiary support and without any support in the law.

First, Blanks blatantly mischaracterizes Helms' deposition testimony when he states that Helms "attested under deposition that he failed to arbitrate any grievance of any union body under his authority [approximately 30,000.00 paying union members] in over **two decades!!!**" (doc. 69 PageID 1068). Conspicuously, Blanks does not attach any excerpts from Helms' deposition transcript. This is not surprising because the Helms deposition transcript plainly belies this characterization. To the contrary, the Helms deposition transcript plainly reflects that Helms testified only to his then Local 848 arbitration record against Vought (*i.e.*, since September 2004) and, while attempting to fully describe his overall arbitration experience, was cut off by Blanks.[14] Moreover, Helms avers in his Second Declaration, which was originally submitted in response to Blanks' blatant mischaracterization of his deposition testimony in his Response to Defendants Motion to Dismiss and/or for Summary Judgment, that he has a significant record of personally arbitrating at least ten (10) grievances over the course of his career as a UAW Local and later International representative and has, in fact, made the decision to submit grievances to arbitration on behalf of Local 848 against Vought which currently remain pending. (doc. 74 PageID 1173-74). Furthermore, Helms' Declaration explains why he was unable to state his complete arbitration record during his deposition (*i.e.*, Blanks cut him off) and, thus, there is no inconsistency between his deposition testimony and his Declaration. (doc 74 PageID 1171-72). In short, there is no summary judgment evidence that supports Blanks' allegation here.

A similar situation exists with respect the Blanks' allegations about Strowd's arbitration record.

---

14 The relevant Helms deposition excerpts containing Blanks' questioning of Helms and his answers are found in the Appendix Defendants filed in Support of Defendants Replay and Brief in Support of Motion to Dismiss and/or for Summary Judgment. (doc.74 PageID 1177-1185).

(doc. 69 PageID 1068). However, unlike the Helms situation, it is undisputed that Strowd did not possess the authority or have the responsibility to take a grievance to arbitration in his position as Grievance Committee Chairman, and he did not make the final arbitration decision here; that authority and decision rested solely with Helms as the UAW International Representative assigned to Local 848. (doc. 74 PageID 1174).Thus, while Blanks also mischaracterizes Strowd's deposition testimony, the bottom line is that Strowd's arbitration record is not material to Blanks' alleged DFR claim given that Strowd indisputably did not, indeed could not, make the final arbitration decision on Blanks' grievance. As such, there is no summary judgment evidence that supports Blanks' allegation here.

The final part of Blanks' contention here is the insinuation in his Motion that Helms' (and, immaterially, Strowd's) arbitration track record can evidence a breach of the DFR. In other words, according to Blanks, he can obtain summary judgment on his DFR claim merely by submitting some evidence that the union's arbitration decisionmaker has taken no grievances to arbitration. Blanks cites no legal authority in support of this self-serving, novel theory (none of the cases he cites support such a theory). In any event, from an evidentiary perspective, Helms' Declaration describing his lengthy history of taking grievances to arbitration puts to rest, beyond dispute, any notion that his decision to not submit Blanks' grievance to arbitration was "deliberate, planned and habitual" as based on his past arbitration track record, which record reflects that Helms has taken numerous grievances to arbitration in his career. (doc. 74 PageID 1173-1175, 1187-1193). As such, Blanks' contention here is completely without merit and does not remotely compel judgment in his favor.[15]

### III.   ALTERNATIVELY, DEFENDANTS' EVIDENCE CONCLUSIVELY ESTABLISHES MATERIAL FACTS THAT AFFIRMATIVELY DEFEAT BLANKS' ALLEGED CLAIM AND, THUS, HIS MOTION MUST BE DENIED.

As Defendants have pointed out to the Court in sections I. and II. above, Blanks' Motion is defeated by the legal doctrine of collateral estoppel, which precludes him from establishing a requisite

---

15 In his Motion, Blanks continues to rail against what he considers discovery abuses committed by Defendants and their counsel in this lawsuit. (doc. 69 PageID 1069-71). However, the Court has rejected all of Blanks' allegations in this regard in several discovery related rulings.

element of his only real alleged claim in this lawsuit, and the numerous defects in his Motion (*i.e*., his summary judgment "evidence" is non-existent, incompetent and/or insufficient, particularly when combined with the established law that is unfavorable to him at nearly every turn). However, in an abundance of caution, should the Court decide that Blanks can get past those hurdles, Defendants hereby submit their own summary judgment evidence that establishes, beyond dispute, material facts that affirmatively and conclusively defeat, on the merits, Blanks' only real alleged claim in this lawsuit: alleged breach of the DFR against Local 848.

> **A.**      ***Undisputed materials facts that affirmatively and conclusively preclude summary judgment in favor of Blanks.***

1. Defendant United Aerospace Workers Local 848 ("Local 848") is a local labor organization affiliated with the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America UAW ("UAW International"). (Helms Decl. ¶5 (doc. 61 PageID 673); Munoz Decl. ¶3 (doc. 61 PageID 822-23).

2. Vought Aircraft Industries, Inc. ("Vought") and the UAW International and its Local 848 were parties to a collective bargaining agreement with a term from 10/1/07 through 10/3/10 ("the CBA"). The CBA at "ARTICLE V GRIEVANCE, ARBITRATION AND DISCHARGE PROCEDURES" contains a procedure for resolving grievances filed by employees covered by that agreement alleging violation of the CBA, including procedures for resolving grievances alleging that an employee has been unjustly discharged by Vought. (Helms Decl. ¶6, Ex1 (doc. 61 PageID 673, 691-97); Strowd Decl. ¶4, Ex1 (doc. 61 PageID 603, 625-31)).

3. Defendant Russell Strowd is a representative of Local 848 and serves as the Grievance Chairman of the Vought "Plant Grievance Committee" for Local 848, in which capacity he is involved in the processing of grievances on behalf of Local 848 filed by either Local 848 or by employees of Vought claiming violation of the CBA. (Strowd Decl. ¶ 3, 5 (doc. 61 PageID 602-03)).

4. Defendant Romeo Munoz is currently the President of Local 848, having assumed office on April 5, 2009. As President of Local 848, Munoz is not involved in the processing of grievances filed by

Vought employees under the CBA until the Prearbitration Review Step, as further described hereafter. (Munoz Decl. ¶ 3, 5, 6 (doc. 61 PageID 622-23)).

5. Defendant Wendell Helms is an International Representative of the UAW International, in which capacity, among other duties, he is assigned to assist in the negotiation and administration of collective bargaining agreements between Vought, its predecessor and successor companies, and the UAW International and its Local Union 848. As International Representative Helms is not involved in the processing of grievances filed by Vought employees under the CBA until the Prearbitration Review Step, as further described hereafter. (Helms Decl. ¶ 3, 5, 7 (doc. 61 PageID 672-74)).

6. Plaintiff A. Cornell Blanks worked as an Assembler for Vought for approximately six months from 1/8/08 (Strowd Decl. ¶15 (doc. 61 PageID 607-08)) until he was terminated by Vought on 7/10/08, on the grounds, as stated in a letter from Vought to Blanks on that same date, that he had made a "deliberate falsification of information [he] provided on a workers compensation claim" by claiming that he had been injured on the job on Monday, 6/23/08, for which he submitted a claim for workers compensation, but that upon investigation by Vought it had been determined that Blanks had not been at work on 6/23/08, and thus had falsified his workers compensation claim. (Strowd Decl. ¶ 15, Ex.2, (doc. 61 PageID 607-08, 632)); (Helms Decl. ¶ 12a, Ex.3, (doc. 61 PageID 676, 699)).

7. On Friday, July 18, 2008, Blanks came to the Local 848 union hall where he met with Strowd, Al Shedrick (who was the Grievance Committeeman for the area of the Vought plant in which Blanks worked), and Steward J.T. Wilson. At that time Blanks requested that a grievance be filed against Vought under the CBA contesting his discharge. Shedrick then prepared, and Blanks signed, grievance #08-0446, contending that he was "unjustly terminated" by Vought and requesting that he be reinstated. (Strowd Decl. ¶16, Ex3 (doc. 61 PageID 608, 633); Shedrick Decl. ¶3,4 (doc. 61 PageID 830-31)).

8. At the time Blanks met with Strowd, Shedrick and Wilson at the Local 848 union hall to file his grievance, he told them that he had in fact reported to work on 6/23/08, and that he had been injured while working on that date when a plant hoist slipped which was holding up an engine he claims to have

been working on. As support, Blanks told Strowd, Shedrick, and Wilson at that time that a coworker named Thomas Chick, who is now deceased, could corroborate his story, both that he worked on 6/23/08 and that he suffered an injury on that date when a plant hoist slipped. (Strowd Decl. ¶18 (doc. 61 PageID 609); Shedrick Decl. ¶5 (doc. 61 PageID 831-32); (Wilson Decl. ¶10 (doc. 61 PageID 836)). At that time, and at no subsequent time, did Blanks provide them or any other Local 848 representative with any other evidence to substantiate or otherwise support his claim that he was at work on 6/23/08, or that he suffered an injury on the job on that date, or on any other date. Blanks never stated to Strowd, Shedrick, Wilson, or any other Local 848 representative, at that time or thereafter, that Vought had made a mistake and had listed the wrong date that he was injured in its July 10, 2008 letter terminating him and that he was actually injured on June 21, 2008, a date Vought's termination letter stated that he did work, although he was not scheduled to do so; rather, Blanks consistently told Local 848 representatives that he worked and was injured on June 23rd.  (Strowd Decl. ¶18 (doc. 61 PageID 609); Shedrick Decl. ¶5 (doc. 61 PageID 831-32); (Wilson Decl. ¶10 (doc. 61 PageID 836)).

    9. To determine whether Thomas Chick could support Blanks' statement that he was had worked and was injured on the job on 6/23/08, Strowd asked Wilson to contact Chick to see if he could verify Blanks' account.  While in Strowd's office, Wilson spoke by telephone with Chick who told Wilson that he had no recollection of Blanks working on 6/23/08, nor did he recall seeing Blanks suffer an on the job injury.  After relaying what Chick had told Wilson to Strowd, to be sure that Chick could not provide support for Blanks' grievance, Strowd asked Wilson to go and speak with Chick personally and ask him again whether he could remember seeing Blanks at work on the 23rd and whether he had any memory of Blanks being involved in an accident on that date or on any other date where Blanks was injured while working in the plant. On that date, or within a few days thereafter, Wilson went to see Chick in person in the Vought plant and again asked him if he could remember seeing Blanks at work in the plant on June 23rd, and if he had any recollection of seeing him get injured while at work. Chick again told Wilson that he had no recollection of seeing Blanks at work on June 23rd and also that he had never seen Blanks

involved in any accident or injury on that date or on any other date while he was at work in the plant. Wilson then reported back to Strowd that he had spoken with Chick personally and that he again told him that he did not recall seeing Blanks at work on 6/23/08 or recall seeing him suffer an injury on the job on that date or on any other date. Chick has since died. (Strowd Decl. ¶18-19 (doc. 61 PageID 609-10); Wilson Decl. ¶3-9 (doc. 61 PageID 834-36)).

10. Blanks' grievance contesting his discharge was signed by Shedrick on Friday, July 18, 2008, and presented by him to Vought Human Resources Generalist Deborah Paino at 9:30 a.m. on the following Monday, July 21, 2008. As Blanks' grievance involved employee discipline or discharge, per Article V, Section 10f of the CBA, the grievance was entered directly into the Second Step of the procedure, as indicated on the grievance form. (Strowd Decl. ¶16, 20, Ex3 (doc. 61 PageID 608, 610-11, 633); (Shedrick Decl. ¶4 (doc. 61 PageID 831)).

11. After Shedrick met with Paino and presented Blanks' grievance, Paino, issued Vought's Second Step decision on July 23, 2008 denying the grievance, stating on the grievance form that it was Vought's position that Blanks had been "terminated after he deliberately changed and falsified info he provided on a workers comp claim." Specifically, as further stated in Paino's second step disposition of Blanks' grievance, the factual basis upon which Vought relied to support this charge was as follows:

> Greivant [Blanks] had originally submitted all of his info [for his workers compensation claim] to the [Vought] Medical Dept. via phone on 7-3-08, but reported in person later that day [to the Medical Department] & changed the date that he allegedly hurt himself to 6-23-08. Stated injury occurred @ 6:15 AM on 6-23. States he left work before 7:00 AM & reported to Emid Hill [his supervisor] prior to leaving. Company records indicate: [he] called in sick 5:38 AM on 6-23, no clock-ins, supv. & co-workers did not see or talk to him on 6-23. Grievance Denied.

(Strowd Decl. ¶20, Ex3 (doc. 61 PageID 610-11, 633); (Shedrick Decl. ¶4 (doc. 61 PageID 831)).

12. On July 24, 2008, Shedrick picked up Blanks' grievance containing Vought's Second Step decision denying the grievance and, in turn, as a member of Local 848's Vought Plant Grievance Committee, he appealed the grievance to the Third Step of the grievance procedure pursuant to Article V, Section 5 of the CBA to be heard at a Third Step meeting of the Vought Grievance Review Committee.

(Strowd Decl. ¶21, Ex3 (doc. 61 PageID 611, 633); (Shedrick Decl. ¶4 (doc. 61 PageID 831)).

13. Because Vought's July 10, 2010 letter stated that Blanks was being terminated for falsely claiming that he worked and suffered an on the job injury on 6/23/08, and because Blanks himself had told Local 848 representatives that he in fact did work and was injured on June 23rd, Local 848 representatives focused their investigation of Blanks' grievance on looking for evidence that would show that Blanks in fact worked on June 23rd and was injured on that date. (Strowd Decl. ¶22 (doc. 61 PageID 611); Shedrick Decl. ¶6 (doc. 61 PageID 832)).

14. As part of Local 848's investigation of Blanks' grievance, prior to the Third Step meeting, Strowd and Shedrick requested that Vought provide them with the documentation and other evidence which Vought was relying on as proof that Blanks did not work on 6/23/08 when he claimed to have been injured on the job and that he had otherwise submitted false information in connection with his workers compensation claim. They also requested specific attendance and work records from Vought of the type which would show if Blanks had worked on June 23rd, and that would have been generated by Vought if Blanks had come into work that day. They also requested a copy of Blanks' personnel file to determine his prior work and disciplinary record. (Strowd Decl. ¶23 (doc. 61 PageID 611-12); Shedrick Decl. ¶6 (doc. 61 PageID 832)).

15. In response to Local 848's information request, Vought provided Strowd and Shedrick with a copy of Blanks' personnel file and with a packet of various attendance, work, medical, and workers compensation claim information and documentation. Later at the Third Step Meeting on August 15, 2008, Vought also provided Strowd and the Plant Grievance Committee with a printout of a Powerpoint slide show Vought presented at the Third Step meeting detailing and summarizing Vought's investigation and the documentation Vought contended supported its position that Blanks had been terminated for just cause by falsifying information on his workers compensation claim. (Strowd Decl. ¶24, 27; Ex4 (doc. 61 PageID 612-14, 634); Shedrick Decl. ¶6 (doc. 61 PageID 832)).

16. Upon review of the documents and information requested by Strowd and Shedrick provided

by Vought, which would have shown if Blanks had worked on June 23rd, Strowd and Shedrick found no indication that Blanks had come into work on June 23rd.  Also, from their investigation, not only did Blanks' supervisor state that Blanks did not come into work on June 23rd, none of Blanks' co-workers, including Chick, recalled seeing him at work on June 23rd, nor did any of his coworkers recall seeing him get injured on the job on that date or any other date. (Strowd Decl. ¶24; Ex4 (doc. 61 PageID 612-13, 634); Shedrick Decl. ¶6 (doc. 61 PageID 832)).

17. A Third Step meeting was held on August 15, 2008 pursuant to Article V, Section 5 of the CBA with regard to Blanks' grievance, and a number of  other grievances which were also set up for consideration on that date. (Strowd Decl. ¶25 (doc. 61 PageID 613)).

18. At the Third Step Meeting Strowd, as Grievance Chairman, and the other members of the Plant Grievance Committee argued in support of Blanks' grievance that, although the documentation did not show that Blanks was at work on 6/23/08, it did not prove that he was not at work on that date. They also argued that in the circumstances discharge was too harsh a penalty for what may be simply a mistake in completing the workers compensation forms and that as a relatively new employee, hired on January 8, 2008, whose personnel file indicated no prior discipline or work problems, he should be given another chance. On that basis they argued that Blanks should be reinstated and made whole, or that alternatively that his termination should be reduced to a suspension. (Strowd Decl. ¶26 (doc. 61 PageID 613)).

19. At the Third Step meeting Vought representatives reviewed with the Local 848 Plant Grievance Committee the evidence summarized in the slide presentation (see Strowd Decl. ¶27; Ex4 (doc. 61 PageID 613-14, 634)) which Vought contended proved that Blanks did not work at Vought on 6/23/08 when he claims to have been injured on the job. Vought presented evidence that Blanks had called in sick that morning and that he had made inconsistent statements about the date when he claims he was injured: initially telling the Vought Medical Department during a phone call on July 3, 2008 that he was injured on June 21, 2008, but then later that day going to the Medical Department and telling

them that he had made a mistake and adamantly insisting that the Medical Department prepare a new injury report showing the date of his injury to be 6/23/08. (*Id*.; doc. 61 PageID 613-14, 634-52). Vought also presented evidence that Blanks' supervisor and none of his coworkers saw him at work on June 23rd and that none of his coworkers recalled him being injured on June 21st, when he was at work, or on any other date. (*Id*.).  Moreover, they argued that the Vought attendance and work records which would have shown if Blanks worked on June 23rd showed that he never clocked-in, checked out tools, performed any work, or otherwise indicated that he had come into work on June 23rd. (*Id*.).  Thus, Vought took the position that Blanks was properly "terminated for deliberate falsification of Company records, i.e., information he provided on a workers compensation claim" which by itself provided just cause for his termination. (*Id*.). With regard to information that Blanks had been recalled to Lockheed Martin from layoff and was working there, or planned to also work there, Vought indicated that the evidence that Blanks had made inconsistent statements about the date he claims to have been injured and that he had called in sick and was not at work on 6/23/08 when he claimed to have suffered an on the job injury at Vought, was sufficient proof in itself that he was guilty of falsifying information in making a workers compensation claim to support his termination for just cause. (*Id*.). On that basis, Vought refused at the Step Three meeting to reverse its decision to terminate Blanks, and would not consider modifying its disciplinary action by agreeing to impose a lesser form of discipline, such as reinstatement without back-pay, as a settlement for Blanks' grievance.  (*Id*.).

20. On September 2, 2008, Vought Labor Representative Frank Baczewski, entered Vought's Third Step disposition of Blanks' grievance on the grievance form stating that

> "It is the Company's position that no provision of Article V has been violated.  The grievant was disciplined for just cause in accordance with Company Policy.  Grievance denied."

(Strowd Decl. ¶28; Ex3 (doc. 61 PageID 614-15, 633)).

21. After Vought's denial Blanks' grievance at the Third Step, the Plant Grievance Committee voted to appeal Blanks' grievance to the Prearbitration Review Step pursuant to Article V, Section 7 of

the CBA, commonly referred to as Step 3½. On January 20, 2009, as Chairman of the Committee, Strowd signed Blanks' grievance appealing it to the Prearbitration Review Step so that it could be heard at the next quarterly Prearbitration Review meeting scheduled for January 29, 2009. (Strowd Decl. ¶29; Ex3 (doc. 61 PageID 615, 633)).

22. At the Prearbitration Review Step, or Step 3½, of the grievance procedure the grievance is no longer handled at the Vought plant level.  As required by Article V, Section 7a of the CBA, an appeal from a Third Step denial is made to the Vought Director of Labor Relations and the subsequent Step 3½ Prearbitration Review meeting is required under Article V, Section 7b to be held between Vought's Director of Labor Relations, or his/her designee, and the following representatives of Local 848: the Chairman of the Plant Grievance Committee, the Local 848 President, and a representative of the UAW International Union.  It is at the Step 3½ level of the grievance procedure that Wendell Helms, the International Representative assigned to Local 848, and Local 848 President Munoz became involved in the processing of Blanks' grievance. (Strowd Decl. ¶29 (doc. 61 PageID 615); Helms Decl. ¶7, 8, 11 (doc. 61 PageID 673-76)).

23. Once a grievance is denied at the Third Step, if the Plant Grievance Committee votes to appeal it to the Prearbitration Review Step, it typically takes several months for the grievance to reach the point that it will be considered at the Step 3½ meeting specified in Article V, Section 7b of the CBA. This is because the Step 3½ meeting involves not one but a number of grievances appealed to Step 3½ and also requires the participation of a UAW International Representative, who has the authority and makes the decision whether to arbitrate a grievance which is not settled at that meeting.  As such, Step 3 ½ meetings are usually scheduled on a quarterly basis. The next Step 3 ½ meeting which was scheduled after Vought's September 2, 2008 denial of Blanks' grievance at the Third Step was on January 29, 2009, at which Strowd arranged for it to be initially set. (Strowd Decl. ¶11, 30 (doc. 61 PageID 605-06, 615-16); Helms Decl. ¶8, 10 (doc. 61 PageID 674-75)).

24. After grievances are appealed to the Prearbitration Review Step, during the time between the

Third Step denial of a grievance and the Step 3½ meeting, discussions continue between representatives of Local 848 and Vought in an effort to settle unresolved grievances before the Step 3½ meeting, which is the last step in the grievance procedure where there remains the opportunity to settle a grievance prior to the union having to make the decision under Article V of the CBA to arbitrate the grievance under Section 8 or to withdraw it under Section 6b. (Strowd Decl. ¶31 (doc. 61 PageID 616); Helms Decl. ¶10 (doc. 61 PageID 675)).

25. After the September 2, 2008 Third Step denial of Blanks' grievance contesting his termination, Strowd had a number of discussions with Vought representatives prior to the January 29, 2009 Step 3½ meeting in an effort to reach a settlement regarding the grievance. During that time Vought continued to refuse to consider any settlement of Blanks' grievance which would reverse or modify the discipline imposed, taking the position that Blanks had been terminated for just cause. (Strowd Decl. ¶32 (doc. 61 PageID 616)).

26. Blanks' grievance contesting his termination was initially set up for submission for a Step 3½ Prearbitration Review meeting on January 29, 2009. (Strowd Decl. ¶33 (doc. 61 PageID 616-17)). During that meeting, which UAW International Representative Helms was unable to attend, Grievance Chairman Strowd and then Local 848 President Ron Cohagen again argued for Blanks to be reinstated, or that Vought consider in the alternative some lesser form of discipline short of discharge, as Blanks had an otherwise clean disciplinary record and was a recent hire who should be given another chance. (*Id.*; Helms Decl. ¶12b. (doc. 61 PageID 676-77)). In response, Danielle Nucci Garrett, Vought's HR manager, again stated that Vought was unwilling to consider any settlement of Blanks' grievance which would reverse his discharge or otherwise modify the discipline imposed. (*Id.*) As it appeared no settlement of the grievance would be reached at that meeting, Strowd, as Chairman of the Plant Grievance Committee, and President Cohagen requested that Vought agree to hold Blanks' grievance in abeyance to allow additional time to try and reach a settlement of his grievance, as opposed to their having to withdraw the grievance at that time, as only the International Representative Helms could

make the decision to arbitrate. (Strowd Decl. ¶33 (doc. 61 PageID 616-17); Helms Decl. ¶12b. (doc. 61 PageID 676-77)) ).

27. Per that request, it was agreed to hold Blanks' grievance in abeyance and the Grievance Report dated January 29, 2009 stated that Blanks' grievance contesting his discharge was being "Placed in abeyance." (Strowd Decl. ¶34, Ex5 (doc. 61 PageID 617, 653)).

28. Thereafter, Strowd had number of further discussions with Vought labor relations representatives in an effort the find a satisfactory resolution to Blanks' grievance. However, Vought representatives remained adamant that Vought would not consider any settlement of Blanks' grievance, whether that be reinstatement with or without back pay, or any other alteration to the terms of Blanks' employment termination from Vought. (Strowd Decl. ¶35 (doc. 61 PageID 617)).

29. After further efforts by Strowd to resolve Blanks' grievance with Vought by settlement proved to be unsuccessful, Strowd again set Blanks' grievance up for consideration at the Step 3½ Prearbitration Review meeting scheduled for October 28, 2009, at which meeting UAW International Representative Helms would be in attendance. (Strowd Decl. ¶36 (doc. 61 PageID 617); (Helms Decl. ¶11 (doc. 61 PageID 675-76)).

30. Prior to the October 28, 2009 Step 3½ meeting Strowd, Local 848 President Munoz, and UAW International Representative Helms met so that Strowd could brief Helms and Munoz regarding the grievances which were to be considered at that meeting, including Blank's grievance contesting his discharge by Vought. (Helms Decl. ¶12-14 (doc. 61 PageID 676-82); Strowd Decl. ¶37 (doc. 61 PageID 618-19); Munoz Decl. ¶7-8 (doc. 61 PageID 824-25)). With regard to Blanks' grievance Strowd advised Helms and Munoz that Vought had terminated Blanks based on the charge that he had intentionally falsified information he had provided in connection with a workers compensation claim, by stating that he had suffered a work-related injury on 6/23/08, a day when he was not at work.  (Helms Decl. ¶12a (doc. 61 PageID 676)). In that briefing Strowd reviewed with Helms and Munoz what had occurred at the prior steps of the grievance procedure, including that Blanks' grievance had been held in abeyance

after the January 29, 2009 Step 3½ meeting, at which they were not present, to allow more time to reach a settlement, as opposed to withdrawing the grievance at that time as lacking merit to arbitrate.  (Helms Decl. ¶12b (doc. 61 PageID 676-77); Strowd Decl. ¶37 (doc. 61 PageID 618-19)).  Strowd also briefed Helms and Munoz regarding the evidence presented by Vought during the Second and Third Steps of the grievance procedure to support its charge that Blanks had falsified information provided in connection with his workers compensation claim by claiming a work related injury on a day he was not at work. (Helms Decl. ¶12d.i and iii; Ex4 (doc. 61 PageID 677-79, 700-18); Strowd Decl. ¶37 (doc. 61 PageID 618-19); Munoz Decl. ¶8 (doc. 61 PageID 824-25)).  Strowd also briefed Helms and Munoz regarding the findings he and the Plant Grievance Committee had made from their own investigation into Blanks' grievance, which included requesting specific records from Vought which would have shown whether Blanks had worked on June 23rd when he claims he was injured, requesting Blanks' personnel file to check his prior disciplinary and work record (*Id.*), and checking out Blanks' statement that coworker Thomas Chick could verify that Blanks worked and was injured on the date in question. (Helms Decl. ¶12d.ii. (doc. 61 PageID 678); Strowd Decl. ¶37 (doc. 61 PageID 618-19); Munoz Decl. ¶8 (doc. 61 PageID 824-25)). With regard to the findings from that investigation Strowd advised Helms and Munoz that although Blanks' personnel file showed he had a clean disciplinary record, their investigation could not find any evidence that Blanks was at work on June 23rd, or that he was injured on that date on any other date. (Helms Decl. ¶12d.i-iii (doc. 61 PageID 677-79); Strowd Decl. ¶37 (doc. 61 PageID 618-19); Munoz Decl. ¶8 (doc. 61 PageID 824-25)). Not only did Chick not recall seeing Blanks at work on June 23rd or get injured, but also Blanks' supervisor and other coworkers did not see him at work on that day, and Blanks' attendance, work, and other records did not indicate that he worked that day. (*Id.*) Strowd also advised Helms and Munoz that Blanks had given inconsistent statements to Vought's Medical Department as to the date he was injured, first telling them that he was injured on June 21st and later telling them that he was injured on June 23rd. (*Id.*)

 31. During Strowd's meeting with Helms and Munoz to brief them prior to their Step 3½

meeting with Vought he also reviewed with them the following documentation and information relied on and submitted by Vought to support its decision to terminate Blanks (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18)):

• Doctor's Form submitted by Blanks to Vought dated 6/23/08 signed by Dr. Sandy Bidner, North Texas Orthopedic, PLLC diagnosing Blanks with degenerative lumbar disc disease and unable to work (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Employer's First Report of Injury or Illness Form dated 7/3/2008 completed by Vought Medical Dept. Nurse Lamona Von Hatten identifying 6/23/08 as the date of Blanks' injury (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Email from Workers Compensation Analyst Patricia Bradshaw advising Vought Human Resources Generalist Debra Paino that Dr. Binder's office indicated that they did not see Blanks on 6/23/08, but on July 25, 2008, and at that time he did not report a work injury, leading Vought to suspect the 6/23/08 form from Dr. Binder was not authentic (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Vought work, attendance, and payroll records reflecting that Blanks requested personal or FMLA days and did not work on 6/18, 6/19 or 6/20, but did report for work on Saturday, 6/21 and was on the clock for 6.3 hours even though he was not scheduled to work or expected to work by management on that date (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Vought records indicating that Blanks called in sick at 5:38 AM on Monday, 6/23, indicating that he would not work that day (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Vought records indicating that Blanks called on 6/24 and said that he would be out about one week (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Vought records indicating that Blanks called on 6/25 and requested sick time and when advised that he did not have sick time he requested workers comp time off  (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Vought records indicating that Blanks called on 6/26, 6/27 and 6/28 stating that he would be off work until his release to return on 7/2 (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Vought records indicating that via a phone conversation on the morning of 7/3 Blanks first reported to the Vought Medical Dept. that he was injured on the job during the hours he worked on 6/21 (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Vought records indicating that later in the day of 7/3, Blanks reported to the Medical Dept. that he had made a mistake on his initial report of the work related injury, that the injury actually took place at 6:15 AM on 6/23 (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Vought records indicating that witnesses did observe Blanks working on 6/21 but no-one knew of any accident or injury involving Blanks. Vought records further indicating that no hourly or salary personnel including Blanks' Supervisor, Emid Hill, observed him at work at all on 6/23 (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18));

• Vought records indicating that Blanks made no normal transaction to substantiate his presence at the work site on 6/23 (seven (7) standard Vought reports that record daily activities of employees reflected no activity by Blanks) (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18)); and

• Information from Vought that no incident, injury accident or safety complaint was reported or submitted by Blanks to any Vought personnel on 6/21 or 6/23 (Helms Decl. ¶14, Ex4 (doc. 61 PageID 680-82, 700-18)).

32. During Strowd's meeting with Helms and Munoz to brief them prior to their Step 3½ meeting with Vought, he also discussed the information that Blanks had been recalled to Lockheed Martin from layoff and was then working, or planned to also work there. Strowd advised them, however, that Vought had indicated that the evidence that Blanks had made inconsistent statements about the date he claims to have been injured and that he had called in sick and was not at work on June 23rd when he claimed to have suffered an on the job injury at Vought, was sufficient proof in itself that he was guilty of falsifying information in making a workers compensation claim to support his termination for just

cause. (Helms Decl. ¶13, Ex4 (doc. 61 PageID 680, 700-18); Strowd Decl. ¶37 (doc. 61 PageID 618-19); Munoz Decl. ¶8 (App221)).

33. Considering the evidence submitted and relied on by Vought to justify Blanks' termination, Strowd advised Helms and Munoz that during the prior steps of the grievance procedure he had argued for Blanks' reinstatement to Vought on the grounds that termination was too harsh a penalty for what might be simply a mistake in completing the forms, and that since Blanks' disciplinary record was clean and he was a new employee, he should be given another chance. On that basis he had asked Vought to reinstate Blanks.  Strowd advised Helms and Munoz, however, that Vought's consistent position during the prior steps of the grievance procedure was that Blanks was guilty of providing false information on his workers compensation claim which was just cause for his termination and Vought refused to consider any settlement of his grievance altering his discharge. (Helms Decl. ¶12e. (doc. 61 PageID 679-80); Strowd Decl. ¶37 (App18); Munoz Decl. ¶8 (doc. 61 PageID 824-25)).

34. On October 28, 2009, Helms, Munoz, and Strowd met with Vought's Manager of Labor Relations Danielle Nucci Garrett for the Step 3½ Prearbitration Review meeting pursuant to Article V, Section 7 of the CBA with regard to Blanks' grievance, as well as a number of other grievances which were set on that date. (Helms Decl. ¶15 (doc. 61 PageID 682); Strowd Decl. ¶38 (doc. 61 PageID 619); Munoz Decl. ¶9 (doc. 61 PageID 825)). With regard to Blanks' grievance, Helms, Strowd, and Munoz again argued that discharge was too harsh a penalty in the circumstances for what might just be a mistake in completing Blanks' workers compensation forms and in remembering which dates he had worked, that he had no prior disciplinary or work issues, and that they felt Vought should give Blanks another chance. (*Id.*). On that basis they attempted on Blanks' behalf to convince Garrett  to reinstate him, if not with full back pay, then in the alternative, to reduce his discharge to a suspension. (*Id.*). Garrett, as had all previous Vought representatives during the Second and Third Steps of the grievance procedure, stated that Vought's position remained that Blanks' discharge was fully supported by just cause for the reasons stated in the July 10, 2008 letter discharging him and that Vought was unwilling to amend its position

and would not agree to reinstate Blanks or alter in any manner the decision to terminate him. (*Id*.).

35. After the October 28, 2009 Step 3½ Prearbitration Review meeting with Vought, Helms, Strowd, and Munoz met to discuss the disposition of those grievances which had been considered during that meeting, including Blanks' grievance, as the Step 3 ½ meeting is the last step of the grievance procedure under Article V of the CBA before an unresolved grievance would either be submitted to arbitration under Section 8 or withdrawn by Local 848 under Section 6b. (Helms Decl. ¶ 16 (doc. 61 PageID 683); Strowd Decl. ¶ 39 (doc. 61 PageID 619-21); Munoz Decl. ¶ 10 (doc. 61 PageID 825-26)). With regard to Blanks' grievance, upon further discussion between Helms, Strowd and Munoz, Helms decided, as the UAW International Representative responsible for deciding whether to arbitrate a grievance under Article V, Section 7a of the CBA, that it would be fruitless to submit Blanks' grievance to arbitration, as Helms did not believe based on the evidence from Local 848's investigation of the grievance that an arbitrator would sustain Blanks' grievance.  (Helms Decl. ¶ 16, 21 (doc. 61 PageID 683, 685-86)). Helms' decision not to submit Blanks' grievance to arbitration, in which decision both Strowd and Munoz concurred, was based his conclusion that Vought had presented substantial evidence, which Local 848's investigation had found no evidence to controvert, that Blanks had deliberately falsified information he had provided in connection with his workers compensation claim by claiming that he was injured on the job on a date when no Vought records or other evidence provided any support to show that Blanks was working on that date. (Helms Decl. ¶ 16 (doc. 61 PageID 683); Strowd Decl. ¶ 39 (doc. 61 PageID 619-21); Munoz Decl. ¶ 10 (doc. 61 PageID 825-26)). In making the decision that Blanks' grievance did not merit taking it to arbitration Helms also considered that Blanks had made inconsistent statements to Vought as to the date he was injured, at first telling the Vought Medical Department that he was injured on June 21st, and then insisting they change the date to June 23rd. (*Id*.). Helms also considered that Blanks had provided Local 848 with no evidence to prove that he worked on June 23rd and suffered an injury on that date, except for Blanks' statement that co-worker Thomas Chick could corroborate his story; however, in two conversations with Chick, Local 848 steward Wilson had

been told by Chick that he did not recall seeing Blanks at work on that date or suffering an on-the-job injury. (*Id.*). Helms thus decided, based on his good faith belief that an arbitrator would not sustain Blanks' grievance on the merits and that arbitration would be fruitless, to withdraw Blanks' grievance from the grievance procedure and not to submit it to arbitration. (*Id.*).

36. A grievance not otherwise settled at the Step 3½ Prearbitration Review meeting, which is the last step of the grievance procedure under Article V of the CBA prior to arbitration, but which Helms as the UAW International Representative assigned to Local 848 decides lacks merit to take to arbitration, is withdrawn pursuant to Section 6b of Article V of the CBA and treated as being settled in accordance with that provision. (Helms Decl. ¶18, Ex1 (doc. 61 PageID 684-85); Strowd Decl. ¶12 (doc. 61 PageID 606-07).

37. Based on Helms' decision not to submit Blanks' grievance to arbitration it was withdrawn from the grievance procedure pursuant to Section 6b of Article V of the CBA and treated as being settled in accordance with that provision. Accordingly, the Local 848 Grievance Report dated October 30, 2009, which included the disposition of the grievances which were considered at the October 28, 2009 Step 3½ meeting, reflects that Blanks' grievance was "Settled in accordance with Article 5, Section 6b." (Helms Decl. ¶18, 19, Ex5 (doc. 61 PageID 684-85, 719); Strowd Decl. ¶12, 43, Ex7 (doc. 61 PageID 606-07, 623, 659)).

38. Blanks was notified of Helms' decision to withdraw his grievance and not to submit it to arbitration by certified mail from Helms dated October 30, 2009, received by Blanks on November 2, 2009, in which letter Helms advised Blanks that:

> I have discussed your grievance with your grievance Chairman. We have met and discussed your grievance with the Company. The Company is unwilling to amend their position and I do not feel an arbitrator would sustain our position. Therefore, I have withdrawn your grievance from the grievance procedure. Your rights as of this notice are set forth in the UAW Constitution.

(Helms Decl. ¶20, Ex6 (doc. 61 PageID 685, 722); Strowd Decl. ¶42, Ex6 (doc. 61 PageID 622-23, 657)).

39. Helms' decision to not to submit Blanks' grievance to arbitration, and Munoz's and Strowd's

concurrence in that decision, was based solely on their assessment of the merits of the grievance and their belief that arbitration would be fruitless. (Helms Decl. ¶21 (doc. 61 PageID 685-86); Strowd Decl. ¶40 (doc. 61 PageID 621-22); Munoz Decl. ¶11 (doc. 61 PageID 826)). Other than their good faith belief that the grievance lacked merit, and would not be sustained by an arbitrator, no other factors had any bearing on their decision not to submit it to arbitration, including Blanks' race, or any medical condition or disability from which he may suffer.  (*Id.*). Nor, was the decision not to arbitrate Blanks' grievance in retaliation for any actions by Blanks, including any attempt he may have made to file an EEOC charge against Local 848, or any other person or entity alleging discrimination because of his race, about which attempt or charge, if any, Helms, Strowd, and Munoz had no knowledge. (*Id.*). Moreover, Blanks never filed a charge of discrimination or retaliation against Local 848 or against the UAW International with the Texas Workforce Commission and/or the Equal Opportunity Commission which was ever served on or received by Local 848 or by the UAW International. (*Id.*). The information that Blanks may have been recalled to and was then working, or planned to also work, at Lockheed Martin also had no bearing on the decision to withdraw Blanks' grievance and not to submit it to arbitration. (Helms Decl. ¶21 (doc. 61 PageID 685-86); Strowd Decl. ¶40 (doc. 61 PageID 621-22)). Even after it became known that Blanks may have been working at Lockheed, Strowd and the Plant Grievance Committee continued to process Blanks' grievance and it was appealed through each step of the grievance procedure up to the October 28, 2009 Step 3½ meeting, the last step of the procedure prior to arbitration. During each step of the procedure considerable efforts were made by Strowd and the Plant Grievance Committee to investigate Blanks' grievance and to secure his reinstatement by Vought. (*Id.*). Even after it became known that Blanks may have been working at Blanks Martin, when Blanks' grievance was not settled at the January 29, 2009 Step 3½ meeting, instead of withdrawing Blanks' grievance at that time as lacking merit to arbitrate, Strowd and the Plant Grievance Committee secured Vought's agreement to hold his grievance in abeyance to allow more time for them to reach a settlement. (*Id.*). Thereafter, only after it became evident to Strowd through further discussions with Vought that no

settlement of Blanks' grievance could be reached, did he set Blanks' grievance back up for consideration

at the October 28, 2009 Step 3½ meeting, at which Helms would be in attendance. (*Id.*).  After a

settlement of Blanks' grievance again could not be reached with Vought at that meeting, Helms made the

decision that it should be withdrawn and not submitted to arbitration based on his experience as a UAW

representative handling discharge grievances for over 24 years, the record before him with regard to the

merits of Blanks' grievance, and his good faith belief that an arbitrator would not sustain the grievance

and that, as such, the grievance lacked the merit to submit to arbitration. (Helms Decl. ¶21 (doc. 61

PageID 685-86)).

  40. At the time the decision was made on October 28, 2009 to withdraw Blanks' grievance and

not to submit it to arbitration Helms and Munoz had not had any prior union related dealings with

Blanks, nor did they know him or otherwise have any personal dealings with him. (Helms Decl. ¶22

(doc. 61 PageID 687); Munoz Decl. ¶4 (doc. 61 PageID 823)). Strowd's only union related dealings with

Blanks prior to the October 28, 2009 decision to withdraw and not arbitrate his grievance all occurred

after Blanks came to the union hall on July 18, 2009 to file his grievance contesting his discharge by

Vought and were all in connection with the processing of that grievance up to the October 28, 2009 step

3½ meeting, and he also had not had any prior personal dealings with Blanks. (Strowd Decl. ¶17, 45

(App7, 23)). The only dealings which Helms, Strowd, and Munoz have had with Blanks have been in

their respective capacities as union representatives or officers for the UAW International or Local 848 in

connection with the filing and processing of Blanks' grievance under the CBA contesting his discharge

from Vought. (Helms Decl. ¶22 (doc. 61 PageID 687); Munoz Decl. ¶4 (doc. 61 PageID 823); (Strowd

Decl. ¶17,45 (doc. 61 PageID 608, 624)).

  41. At the November 15, 2009 regularly scheduled membership meeting of Local 848, the

October 30, 2009 Grievance Report, which set forth the disposition of Blanks' grievance and a number of

other grievances, was presented.  Blanks appeared at that meeting and requested that the decision to

withdraw his grievance be reversed and that his grievance be submitted to arbitration.  (Strowd Decl.

¶44 (doc. 61 PageID 623-24); Munoz Decl. ¶15 (doc. 61 PageID 827-28)).

42. As Helms had advised Blanks in his October 30, 2009 letter notifying him that his grievance as being withdrawn and would not be submitted to arbitration, Blanks' rights to appeal that decision are set forth in the Constitution of the UAW International. Pursuant to Article 33 of the Constitution, an appeal of Helms' decision to withdraw and not arbitrate his grievance, which decision he made in his capacity as a UAW International Representative, is made to the UAW International Union Executive Board, not to Local 848 or its membership. (Helms Decl. ¶23, Ex 7 (doc. 61 PageID 687, 724-34); Munoz Decl. ¶13 (doc. 61 PageID 827); (Strowd Decl. ¶44 (doc. 61 PageID 623-24)).

43. After Helms' decision to withdraw Blanks' grievance, Blanks sent a series of letters to Helms and to various other representatives of Local 848 and UAW Region 5 objecting to the withdrawal of his grievance and seeking to appeal that decision. Blanks sent a letter to Local 848 Recording Secretary Gary Tessmar attempting to appeal that decision, to which Tessmar responded by correspondence advising Blanks that his attempt to appeal to the Local 848 Executive Board was not in compliance with Article 33 of the UAW Constitution. (Helms Decl. ¶24, Ex8 (doc. 61 PageID 687, 735-54); Munoz Decl. ¶13 (doc. 61 PageID 827)).

44. Thereafter, by correspondence dated November 27, 2009, Blanks subsequently properly perfected an appeal pursuant to Article 33 of the UAW Constitution to the UAW International Executive Board contesting Helms' decision to withdraw his grievance. (Helms Decl. ¶24, Ex8 (doc. 61 PageID 687, 735-54); Munoz Decl. ¶13 (doc. 61 PageID 827)).

45. Upon submission of Blanks' appeal to the UAW International Executive Board of Helms' decision to withdraw Blanks' grievance, UAW International President Gettelfinger, by Inter-Office Communication dated December 11, 2009, forwarded Blanks' appeal to Jim Wells, UAW Region 5 Director with the request that he submit a response to Blanks' appeal to the UAW International.  In turn, on December 23, 2009, Director Wells forwarded to Helms by facsimile transmission a copy of President Gettelfinger's Inter-Office Communication of December 11, 2009 with the request that Helms

prepare a response to Blanks' appeal. (Helms Decl. ¶25, Ex8 (doc. 61 PageID 688, 735-542)).

46. By Inter-Office Communication dated May 21, 2010, Helms forwarded to UAW

International President Gettelfinger a response to Blanks' appeal (Helms Decl. ¶27, Ex10 (doc. 61

PageID 689-90, 761-805) of his decision to withdraw his grievance, to which response he attached,

among other documents, copies of documents requested by Local 848 from Vought which were relied on

by Helms in making his decision to withdraw Blanks' grievance (*Id.*), and in which he set forth his

response to the allegations contained in Blanks' November 27, 2009 appeal as follows:

> Mr. Blanks' grievance was processed through the Grievance Procedure up to the
> International Representative. I conducted a pre-arbitration (commonly referred to as 3 ½
> step) review of Grievance # 08-0446, Andre Blanks - Termination on Wednesday,
> October 28, 2009 and based upon the merits thereof, withdrew same.
>
> Mr. Blanks received full representation and due process from both Local 848 and the
> International Union based solely upon the merits of his case.
>
> On November 15, 2009, Local 848 conducted its regular monthly membership meeting
> (there was no such "hearing"), where the Vought Unit Chairman distributed the unit
> Grievance Report, stating Grievance # 08-0446, Andre Blanks - settled in accordance
> with Article 5, Section 6B (attached language). This reference means that the grievance
> was withdrawn per the language of the C.B.A.
>
> The Union could not sustain the grievant's (A. Blanks) claims that he was covered by
> physician excuse, due to conflicting dates that the grievant reported to the Company
> "call-in" line, the Company Medical Department, and Worker's Compensation
> documents. Further, the Company's time records reveal that A. Blanks did not clock-in /
> report to work on June 23, 2008. Blanks did report to the "call-in" line at 5:38 a.m. for
> sick time. The Company refused the Union's attempts to get A. Blanks reinstated.
> Based upon the insurmountable discrepancies of the merits of this case, therefore I
> withdrew Grievance # 08-0446. [*Id.*].

47. In accordance with Article 33 Section 3(d) of the UAW International Constitution, Blanks'

appeal of the decision to withdraw his grievance was processed to the UAW International Executive

Board for consideration and determination. On June 28, 2010 the UAW International Executive Board

denied Blanks' appeal (Helms Decl. ¶28, Ex11 (doc. 61 PageID 690, 806-820)) concluding as follows:

> We find that although the merits of the grievance were lacking, the Region 5
> Representative made a reasonable effort to prevail on the Appellant's behalf. He met his
> duty of fair representation. Further, we find that Representative Helms' decision to
> withdraw grievance #08-0446 was grounded in a sound, rational basis and was not
> mishandled as a result of fraud, discrimination, or collusion with management. [*Id.*]

48.  By correspondence from then UAW International President Bob King, dated June 28, 2010 to Blanks, President King forwarded to Blanks the decision of the International Executive Board denying his appeal. (Helms Decl. ¶29, Ex11 (doc. 61 PageID 690, 806-820)).

B.      **Blanks is unable to establish any undisputed material facts that would support his alleged claims.**

The foregoing undisputed material facts establish that Defendants not only met, but exceeded, the duties owed to Plaintiff under the CBA and as his collective bargaining agent in the processing and disposition of his grievance contesting his termination by Vought. (UMF[16] ¶7-39). The decision to withdraw Plaintiff's grievance and not to submit it to arbitration was made only after the grievance had been processed through to the final step of the contractual procedure immediately prior to arbitration, after considerable efforts had been made to settle his grievance without success, and after a thorough investigation from which the reasonable conclusion was reached that on the merits an arbitrator would not sustain the grievance and that arbitration would be fruitless. (UMF ¶35, 39).

The decision to withdraw and not to arbitrate Plaintiff's grievance, which was actually made by UAW International Representative Helms, but was concurred in by Local 848 President Munoz and Grievance Chairman Strowd, was based solely on the merits of Plaintiff's grievance as known to Helms at that time given the results of the union's investigation into the grievance. (*Id.*). The investigation by the Plant Grievance Committee revealed that Vought had substantial and compelling evidence to back up its charge that Blanks had in fact deliberately falsified information that he provided in connection with his workers compensation claim by claiming to have been injured on 6/23/08, a day when there was no evidence that he had reported to work and that there was no evidence that Blanks had been injured at work on that date, or on any other date. (UMF ¶14-16,19). Blanks had no absolute right to have his grievance arbitrated regardless of its merits. And Helms' decision to withdraw Blanks' grievance prior to arbitration was based on his sound, reasoned conclusion, which he arrived at after a careful review and

---

16 Defendants will refer to the undisputed material facts set forth in section III.A above by reference to "UMF" followed by

Memorandum Brief in Support of Response to Plaintiff's (Motion for) Summary Judgment  (doc.69) – Page 44

consideration of the evidence from the Plant Grievance Committee's investigation, that an arbitrator would not sustain the grievance on its merits. (UMF ¶35, 39). Helms' decision was made in good faith and was certainly not arbitrary, discriminatory or made in bad faith, as that test for breach of the DFR has been articulated by the courts in the cases discussed in above. The following review of the undisputed facts makes that clear:

After Blanks was terminated by Vought on July 10, 2008, he came to the Local 848 union hall on Friday, July 18, 2008 and requested that a grievance be filed contesting his termination. (UMF ¶7). To rebut Vought's charge that he had falsely claimed to have been injured on 6/23/08 when Vought stated he had not reported to work, he told Local 848 representatives Strowd, Shedrick and Wilson that he in fact had worked and was injured on 6/23/08 and that coworker Thomas Chick witnessed his injury and could also attest to the fact that he was at work on that date.[17] (UMF ¶8). On that same date, as Blanks had requested, Grievance Committeeman Shedrick, who represented the area of the Vought plant where Blanks worked, prepared a grievance contending that Blanks had been unjustly discharged under the CBA and filed it with Vought the following Monday, July 21, 2008, at the Second Step of the CBA's grievance procedure, which is where grievances challenging disciplinary actions are initially filed under the CBA. (UMF ¶7, 10, 11).

Based on Blanks' claim that he did work and get injured on 6/23/08 and that coworker Chick could support that claim, to investigate the grievance it was logical that Local 848 representatives would first ask Chick if he could support Blanks' story (UMF ¶9) and also that they would focus their

the specific paragraph number(s).

[17]   Blanks never stated to Strowd, Shedrick, Wilson, or to any other Local 848 representative, at that time or thereafter, that he had actually been injured on Saturday, June 21, 2008, a date Vought's July 10, 2008 termination letter stated that he did work, although not scheduled as he now contends; rather, Blanks consistently told them that he worked and was injured on Monday, 6/23/08. (UMF ¶8). Indeed, in the Complaint Blanks specifically alleges that his alleged injury occurred at work on June 23rd and was witnessed by Chick: "Plaintiff injury was witnessed by Mr. Thomas Chick, during the month of *June approximately 23rd 2008*" and ". . . during the month of June 2008 Blanks while in the performance of his job at Vought maintained two distinctly different injuries 1) to the eye, and 2) to the other to the lower back (both while working on the Pratt & Whitney Engine) its further recorded the latest incident occurred *June 2008, on a Monday* in which he worked from 6:00 am until about 7:00 . . ." [emphasis added][Complaint, p. 3]. June 23, 2008 was a Monday. Blanks' attempt to now claim he was injured on June 21st is just another example of Blanks changing his story and making inconsistent statements, this time more than three years after the fact.

investigation on searching for evidence that he in fact worked and was injured on June 23rd, which investigation would include a request that Vought provide them with the type of company records which would reveal the normal daily transactions which necessarily would have been recorded if Blanks had reported to work on that date. (UMF ¶ 13-14). They did that, and also requested that Vought provide a copy of Blanks' personnel file so they could assess his disciplinary record, as it relates to whether discharge was too harsh a punishment considering his past disciplinary record. (*Id.*)

At the request of Grievance Chairman Strowd, union steward Wilson telephoned Chick from Strowd's office and was told by Chick that he did not recall Blanks being at work or get injured on June 23rd. (UMF ¶ 9). Upon Strowd's further request, when Wilson then went to speak with Chick personally, he was again told by Chick that he could not support Blanks' story that he worked on June 23rd or was injured on the job on that date, or on any other date. (*Id.*).

As had been requested by Local 848 representatives, Vought also provided them with the records which would reveal whether Blanks had reported for work on June 23rd and with a copy of his personnel file. (UMF ¶ 15). While Blanks' personnel file did not show any prior discipline, the employee attendance and transaction records provided by Vought failed to reveal that Blanks had engaged in any of the normal daily employee transactions that would substantiate his presence at work on June 23rd. (UMF ¶ 16, 18, 19).

Upon Vought's denial on July 23, 2008 of Blanks' grievance at the Second Step of the grievance procedure, Blanks' grievance was immediately appealed on July 24, 2008 to the Third Step by Grievance Committeeman Shedrick. (UMF ¶ 12). Pursuant to the terms of the CBA, Blanks' grievance, along with others, was then considered at a Third Step meeting between the union and the company on August 15, 2008. (UMF ¶ 17). At that meeting Vought again reviewed the records showing that Blanks had not been at work on June 23rd when he claimed to have been injured, stated that Blanks had given inconsistent statements as to the date he was injured, and also presented a slide show summarizing the documentation Vought relied on to justify Blanks' termination. (UMF ¶ 19). Grievance Chairman Strowd and the Plant

Grievance Committee argued that the documents only failed to show that Blanks was present at work on June 23rd, but did not prove that he was not at work and injured. (UMF ¶18). They also argued that since Blanks had no prior discipline, in the circumstances, discharge was too harsh a penalty. (*Id.*). Despite these efforts on Blanks' behalf, on September 2, 2008 Vought again denied Blanks' grievance at the Third Step stating that he had been discharged for just cause. (UMF ¶20).

Thereafter, the Plant Grievance Committee voted to appeal Blanks' grievance and, accordingly, on January 20, 2009, Grievance Chairman Strowd appealed Blanks' grievance to the Prearbitration Review Step, commonly called Step 3½, so that it could be considered at the next quarterly Step 3½ meeting scheduled for January 29, 2009. (UMF ¶21). The CBA specifies that a Step 3½ meeting be attended by the Grievance Chairman, the Local 848 President and a UAW International Representative, the latter of whom is ultimately responsible for deciding whether to arbitrate a grievance. (UMF ¶22). At the January 29, 2009 meeting International Representative Helms could not attend, so when Vought again refused any settlement of Blanks' grievance, instead of withdrawing it at that time Strowd secured Vought's agreement to hold Blanks' grievance in abeyance to allow him more time to reach a settlement. (UMF ¶26-27). During the ensuing months Strowd had a number of discussions with Vought labor relations representatives in an effort to settle Blanks' grievance, but without success. (UMF ¶28). After it became apparent that no settlement of Blanks' grievance could be reached with Vought, Strowd again set Blanks' grievance back up to be considered at the quarterly Step 3½ meeting scheduled for October 28, 2009, when International Representative Helms would be in attendance. (UMF ¶29).

Prior to the October 28, 2009 Step 3½ meeting with Vought, Helms and Local 848 President Munoz were fully briefed by Strowd regarding the findings from the investigation of Blanks' grievance during the previous steps of the grievance procedure. (UMF ¶30-33). During the October 28th Step 3½ meeting with Vought, Helms, Strowd and Munoz again argued for Blanks' reinstatement or reduction of his termination to a suspension; however, Vought continued to refuse to alter its position or agree to any settlement. (UMF ¶34).

Helms, Strowd and Munoz had been advocates in favor of Blanks' grievance during each step of the procedure up through the October 28, 2009 Step 3½ Prearbitration Review meeting; however, Blanks' grievance having reached the last step of the CBA's grievance procedure before submission to arbitration, it then fell to Helms, as the UAW International Representative assigned to Local 848, to make the decision whether Blanks' grievance merited submission to arbitration. (UMF ¶35). After carefully reviewing the facts from Strowd's and the Plant Grievance Committee's investigation, Helms reasonably concluded that there was substantial and compelling evidence to support Vought's charge that Blanks was guilty of falsifying information he provided in connection with his workers compensation claim, and that, as such, an arbitrator would not sustain the grievance and that arbitration would be fruitless. (UMF ¶35, 39). Helms therefore made the decision to withdraw Blanks' grievance from the procedure and so advised Blanks by letter dated October 30, 2009. (UMF ¶37, 38). Helms made that decision in good faith, based solely on the merits of the grievance, and without regard to any other factors, including Blanks' race, any attempt he may have made to file an EEOC charge, of which Helms, Strowd or Munoz had no knowledge, or other such impermissible factors. (UMF ¶39).

There is simply no evidence to support a finding that any of the Defendants (Local 848 as an institution; UAW International Representative Helms; Local 848 President Munoz; or Local 848 Grievance Chairman Strowd) acted with anything other than "complete good faith and honesty of purpose," Ford, 345 U.S. at 338, in the processing of and eventual decision not to arbitrate Blanks' grievance. Their actions in that regard were certainly well within the "wide range of reasonableness" afforded a union in the representation of those in the bargaining unit, such that their actions cannot be considered irrational, illogical, or egregious in breach of the duty. Id.; O'Neill, 499 U.S. at 67. "In the interest of effectively administering the machinery of grievance arbitration [in making the decision whether to arbitrate Blanks' grievance Helms was] allowed a wide range of discretion in screening out, settling, or abandoning [the] grievance[] before arbitration if [he] believe[d] in good faith that [the] grievance d[id] not justify proceeding through the 'costly and time-consuming final step' of arbitration." McCall, 661 F.Supp.2d at 655, citing Vaca, 386 U.S. at 190-91). Considering the evidence marshaled by

Vought in support of the charge that Blanks had falsified his workers compensation claim, and the facts revealed by Local 848's investigation, Helms' exercise of that wide discretion to withdraw and not submit Blanks' grievance to arbitration was not a breach of the duty.

Indeed Helms' decision not to arbitrate Blanks' grievance was a sound, reasoned exercise of that discretion and thus was not in breach of the DFR. Applying the test for finding a breach of the duty, it was certainly not "arbitrary" since "in light of the factual and legal landscape at the time [the decision was made it was not] so far outside a wide range of reasonableness as to be irrational." O'Neill, 499 U.S. at 67. Nor was the decision "discriminatory" as there is no evidence that Blanks' grievance was handled differently than any others; moreover, only discriminatory conduct which is "invidious" is considered to be a breach of the duty. The Defendants' conduct here was neither discriminatory or invidious. O'Neill, 499 U.S. at 81; McCall, 661 F.Supp.2d at 654. Finally, the decision cannot be considered to have been made in "bad faith." The Fifth Circuit has described the "bad faith" prong of the test to be a "demanding standard" requiring proof of conduct that is "sufficiently egregious" or so "intentionally misleading" as to be "invidious," or have the purpose of intentionally harming member(s). O'Neill v. ALPA, 939 F.2d at 1203-04. To the contrary, Helms, Strowd, Munoz and all other representatives of Local 848 acted in good faith with respect to the processing and disposition of Blanks' grievance. Thus, as a matter of law and fact, Blanks is not entitled to judgment for breach of the DFR against any Defendant and his Motion should be denied.

## CONCLUSION

As demonstrated herein, the summary judgment evidence in this case "supports no[ ] choice" between Defendants' position and Blanks' position because Defendants' proof is so overwhelming that Defendants, not Blanks, would be entitled to a directed verdict at trial under Boeing v. Shipman, 411F.2d 365 (5th Cir.1969) (en banc) on all of Blanks' alleged claims. Neely, 817 F.2d at 1225. Therefore, Plaintiff's (Motion for) Summary Judgment must be denied in its entirety.

Respectfully Submitted,

s/ Sanford R. Denison
SANFORD R. DENISON
Texas Bar No.  05655560
Baab & Denison, LLP
Stemmons Place, Suite 1100
2777 N. Stemmons Freeway
Dallas, TX 75207
(214) 637-0750; (214) 637-0730 FAX
Email: denison@baabdenison.com

COUNSEL FOR UNITED AEROSPACE
WORKERS LOCAL 848 of the UAW, JAMES
RUSSELL STROWD, WENDELL HELMS, AND
DATED: June 21, 2011                    ROMEO MUNOZ

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June, 2011 I electronically filed the forgoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the below listed *pro se* party by electronic means.

A. Cornell Blanks
P.O. Box 101501
Fort Worth, Texas 76185

s/ Sanford R. Denison
SANFORD R. DENISON